Martin M. SIGEL, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

GENERAL DEVELOPMENT CORPORATION, Defendants.

No. 72–18–Civ–FtM.

United States District Court,
M. D. Florida,
Fort Myers Division.

May 11, 1973.

Drinker, Biddle & Reath, Philadelphia, Pa., Shackleford, Farrior, Stallings & Evans, Tampa, Fla., for plaintiffs.

Morgan, Lewis & Bockius, Philadelphia, Pa., Trenam, Simmons, Kemker, Scharf & Barkin, Tampa, Fla., Paul & Thompson, Miami, Fla., for defendant.

## ORDER

HODGES, District Judge.

The Defendant, General Development Corporation (GDC), is a Delaware cor-

poration with its principal place of business in Florida. It is the owner and developer of Port Charlotte Subdivision consisting of approximately 56,000 acres, 113,000 platted lots and a current or resident population of 20,000 people. The lots have been sold over a period of many years, and are still being sold. Such sales are generally made pursuant to a written, installment payment contract or agreement for deed providing for a down payment by the purchaser followed by level monthly installments until the balance of the purchase price, with interest, has been paid in full. The pay out term of the usual contract is approximately ten years, at the end of which GDC is obliged to convey the lots by warranty deed.

The Plaintiffs, Martin M. Sigel and Katherine Sigel, are residents of Pennsylvania. On March 25, 1960, they entered into a typical form of written contract with GDC for the purchase of two lots described as Lots 14 and 15 in Unit 71, Block 4387, Port Charlotte Subdivision, " . . . according to the plat, a copy of the said plat having heretofore been filed with the Board of County Commissioners of Charlotte County, Florida . . . " The total purchase price for both lots was $6,600.00; the down payment was $50.00, and the balance of $6,550.00 was to be paid in equal monthly installments of $70.00 per month including interest at 5% per annum on the declining balance until all principal and interest was paid in full. As previously noted, the contract provided for the delivery of a warranty deed by GDC upon successful completion of the payments by the purchasers, and further provided that " . . . the Subdivider will, also at that time, have completed the paving of the street in front of the lot(s) and also the side street abutting the lot(s) if the same is a corner lot and will have installed a water main in front of the lot(s) so that the purchaser may, at his expense, tap into said main and procure water service to said property . . ." The plat reflected that the Sigel's lots were oversized or larger than most others and were irregular or pie-shaped, measuring approximately 116 X 154 feet (as to lot 14) and 100 X 148 feet (as to lot 15). They were shown as fronting on E. Nastrand Circle and situated at the corner or intersection of Snapper Waterway and Keystone Waterway, i. e., they were canal or waterfront lots.[1]

The Sigels completed their payments under the contract in regular order during 1970. However, by letter dated February 1, 1971, GDC informed them as follows:

"Your contract with G.D.C. provides that the company will improve the area in which your homesites are located during the year in which your contract matures—1970.

"It has been necessary to delay the improvement of your area until 1975. As you know, this date is later than that which is called for in your contract; however the delay has been due to the fact that the majority of purchasers in this particular area have contracts that do not mature until 1975 or later and it would not be feasible to improve the section until the majority of the purchasers have paid in full and would then, of course, consider building on their property. We believe community growth would be haphazard and thus provide problems for both our purchasers and ourselves if the company were to improve your section sooner.

"If, however, you intend to build before 1975, we are pleased to offer you the opportunity of exchanging your lots for ones of equal value in an area

---

I. Although the contract contains no explicit reference to construction of the canals or waterways, Plaintiffs claim that they were, together with certain other amenities, part-and-parcel of GDC's contractual obligation by reference to the plat and other promotional materials.

where improvements have been completed. We make this offer because we are unable to fulfill our original contractual obligation to you.

"Your warranty deed and title insurance policy will be issued during the year 1975 when improvements have been completed in your homesite area. In the meantime, General Development Corporation will continue to pay the Real Estate Taxes on your property."

Enclosed with the letter was a form document denominated as "Non-Transferable" and entitled "Certificate of Land Purchase and Payment" in which GDC acknowledged receipt of all the required payments and stated that title "will be conveyed." The certificate also provided that GDC would continue to satisfy all real estate taxes "until such time as the warranty deed is issued."

On January 27, 1972, this suit was filed in the Eastern District of Pennsylvania, but was subsequently transferred to this Court on June 2, 1972. It was brought as a class action under Rule 23, F.R.Civ.P., "on behalf of a class consisting of all persons with whom GDC has entered into contracts for the sale of land at GDC's Port Charlotte Subdivision." Jurisdiction was predicated upon diversity of citizenship and Plaintiffs' allegation that the amount in controversy exceeds $10,000 exclusive of interest and costs. 28 U.S.C.A. § 1332.

After the filing of an answer by the Defendant, the Court scheduled an evidentiary hearing to determine whether, pursuant to Rule 23(c)(1), the suit should be maintained as a class action. At the suggestion of the parties the Court also scheduled an advance hearing in the nature of a pre-trial conference. During the course of that hearing, and upon examination of the parties' pretrial stipulation, it became apparent that any consideration of the class action or

Rule 23 issues also necessitated a preliminary determination concerning the Court's jurisdiction, i.e., the Defendant not only contended that the requirements of Rule 23 were lacking, but that the jurisdictional prerequisites of 28 U.S.C.A. § 1332 were also missing in that the claims of the named plaintiffs as well as the claims of the individual members of the alleged class did not severally exceed the sum of $10,000 in value.

Thus, despite the fact that Judge Weiner had already considered the question of subject matter jurisdiction as to the named plaintiffs in denying Defendant's Rule 12 motion to dismiss before the case was transferred here; and notwithstanding the general policy against going beyond the pleadings and taking evidence as to jurisdictional issues during the preliminary stages of a case,[2] the jurisdictional question in this instance was so intertwined with the Rule 23 issues that it was impractical if not impossible to consider the latter independently of the former. Accordingly, the Court ruled that the evidentiary hearing would proceed as to both issues: (a) jurisdiction, and (b) maintenance of the suit as a class action under Rule 23.

## JURISDICTION

The Defendant's jurisdictional contentions are two-fold. It is first contended that the claim of the Sigels as the named plaintiffs does not exceed the sum or value of $10,000. Alternatively, Defendant asserts that the claim of each member of the putative class does not exceed $10,000 in value and, as such, the action cannot proceed under Rule 23 even if the Sigels' individual claim does transcend that value. Each of these questions will be considered in turn.

■ The jurisdictional issue concerning the Sigels' individual claim is essentially one of fact, not law. One must begin, however, by attempting to deter-

2. See Continental Casualty Company v. Department of Highways, State of Louisiana, 379 F.2d 673 (5th Cir. 1967); Wright, Law of Federal Courts, § 33 (1970).

mine what the claim *is* in terms of the relief sought, being mindful of the rule in this Circuit that the claim must be valued in the light of its potential benefit to the plaintiff, not its cost to the defendant. Alfonso v. Hillsborough County Aviation Authority, 308 F.2d 724 (5th Cir. 1962). See also, Wright, Law of Federal Courts, § 34 (1970).

The Plaintiffs' claim, of course, is a simple one—breach of contract—but the prayer for relief is stated in broad and alternative terms. The complaint supplicates the Court "to grant such injunctive relief and/or damages as may be required to afford complete relief . . . ." Plaintiffs' argument in their briefs, however, is more specific. They intend to seek a decree of specific performance requiring GDC to complete the improvements, convey the lots and pay damages for the delay.

Thus, without getting into all of the possibilities or variations of both equitable and legal relief that might be awarded if Plaintiffs prevail, the value of the claim is keyed under almost any view to the value of the lots, i.e., the Plaintiffs' claim of right to a conveyance of the lots is the point of beginning and is common to virtually all of the possible forms of relief.[3]

What, then, is the value of the lots? Both parties submitted expert appraisal testimony and other evidence relating to this issue during the hearing. The Plaintiffs' appraiser testified that the lots, if developed in accordance with the contract, would have a current market value of $12,000.00 each or a total value of $24,000.00. Defendant's expert, on the other hand, testified to a current value of $9,600.00 for both lots if developed, or $7,200.00 for both lots in their present, undeveloped state. Testimony was also elicited that the Defendant's own selling price for these or similar lots today would be at least $7,695.00 per lot ($15,390.00 for both) —a factor not considered by Defendant's appraisal witness due to his opinion that a difference in approach is required when the lots are considered as being offered for sale by a private owner as contrasted with GDC.

 As so often occurs with regard to disputes involving the value of real property, the contentions of the respective opponents are each subject to question or criticism in some particular so that one is high, the other is low, and a fair or accurate resolution usually lies somewhere in between. In this instance, however, at least in this stage of the case, it is unnecessary to weigh and sift the evidence in order to arrive at a precise figure or finding. The issue now is *jurisdiction*, not a final award; and even though evidence has been taken for the reasons previously expressed, this does not alter the fact that *jurisdiction* is determined by the "good faith" nature of the Plaintiffs' allegation concerning the value of the matter in controversy. To dismiss for want of jurisdiction it must appear "to a legal certainty" that the claim is really for less than the jurisdictional amount. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288–289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). Viewed in this light it cannot possibly be said "to a legal certainty" on the basis of the evidence presented that the Plaintiffs' allegations concerning the amount in controversy are colorable or fictitious and not made in good faith. Indeed, when measured by that test the evidence is to the contrary.

 The Court finds that the matter in controversy, insofar as the named plaintiffs are concerned, exceeds the sum or value of $10,000.00, exclusive of interest and costs, and since diversity of citizenship has been stipulated, the

3. The remedy of rescission would doubtless be an exception. See 33 Fla.Jur., Vendor and Purchaser, §§ 165 and 181 (1960). But that is one possible form of relief that Plaintiffs have not mentioned and apparently do not seek.

Court has jurisdiction of the cause pursuant to 28 U.S.C.A. § 1332.

The second aspect of the Defendant's jurisdictional argument—that the claims of each member of the putative class must meet the jurisdictional amount requirement—gives rise to several issues of law.

In support of its position the Defendant relies upon the Fifth Circuit decision in Alvarez v. Pan American Life Insurance Company, 375 F.2d 992 (5th Cir. 1967), cert. denied 389 U.S. 827, 88 S.Ct. 74, 19 L.Ed.2d 82 (1967), and especially the more recent decision of the Supreme Court in Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), expressly approving the *Alvarez* conclusion and result (394 U.S. at 336, 89 S.Ct. 1053). See also Zahn v. International Paper Company, 469 F.2d 1033 (2d Cir. 1972), cert. granted, 410 U.S. 925, 93 S.Ct. 1370, 35 L.Ed.2d 585 (1973).

■ No useful purpose would be served by discussing or quoting at length from those decisions. It is sufficient to note that the rule against aggregation of separate claims for jurisdictional purposes under 28 U.S.C.A. § 1332 was held to be fully applicable to diversity actions sought to be maintained under "new" Rule 23, and unless the putative class is a "true" class seeking to enforce a joint or common and undivided interest, the claim of each member of the class must independently satisfy the jurisdictional value requirement of 28 U.S.C.A. § 1332. Thus, even if it is assumed *arguendo* that all of the requirements of Rule 23(a) and (b)(1) or (b)(2) or (b)(3) exist in a given case,

it does not necessarily follow that the action may proceed since the rule is merely procedural, not jurisdictional. See 3B, Moore's Federal Practice, ¶ 23.-95, p. 23–1856, 1857 (2d Ed. 1972).

The plaintiffs attempt to avoid application of these principles in the case *sub judice*, first by distinguishing *Snyder*,[4] secondly by contending that the claim of the class, in any event, is joint or common and undivided; and third by declining to concede that any of the class member's claims are less than $10,000.00 in value.

■ With regard to the contention that the claim of the class is joint or common and undivided, Plaintiffs argue that the principal relief sought in the case is a decree of specific performance requiring GDC to construct the roads, install the water mains, and dredge the canals and waterways for the benefit of all the members of the class in common and, indeed, the public as a whole. Plaintiffs thus conclude that the claim is a common one and that the principle of non-aggregation as applied in *Snyder* is inapplicable. The fallacy in this reasoning, however, lies in the Plaintiffs' failure to differentiate between common interests within the purview of Rule 23, and joint or common and undivided interests of the type that may be considered together for purposes of meeting the minimum jurisdictional amount requirement of the statute. Indeed, this distinction is the very essence of the *Snyder* decision. The mere fact that there are questions of law or fact common to the class, under Rule 23(a)(2), sufficient to justify maintenance of the suit as either a (b)(2) or (b)(3) class

---

4. Plaintiffs point out that the *Snyder* facts involved a situation in which *no* member of the class had a claim equaling the required jurisdictional amount (See 7, Wright & Miller, Federal Practice and Procedure, § 1756 at p. 565 (1972)); and, in addition, that the Court did not consider the doctrine of pendant or ancillary jurisdiction. These precise contentions were rejected by the Second Circuit in *Zahn*, but the Plaintiffs persist by noting that the Supreme Court has granted certiorari in that case. Until the Supreme Court holds otherwise, however, the Second Circuit decision in *Zahn* seems consonant with the Fifth Circuit's decision in *Alvarez* (particularly the concluding paragraph of that opinion), and it must be followed by this Court.

action, does not necessarily compel a corollary conclusion that the individual claims may be aggregated or considered as a whole for jurisdictional purposes. In short, using the terminology developed under old Rule 23 as the Court did in *Snyder,* the non-aggregation principle cannot be avoided merely by showing that a class exists under Rule 23. Rather, it must be shown that the class is a "true" class as distinguished from "hybrid" or "spurious" classes.[5]

■ When the facts of this case are viewed with these distinctions in mind it becomes patently clear that the members of Plaintiffs' class have no joint or common and undivided interests, i.e., theirs is at best a "hybrid" or "spurious" class.[6] Each member of the putative class derives his legal right or claim from his own individual contract with GDC, and while his right to injunctive relief may or may not be coextensive with that of the other members of the class, his right to damages, if any, almost surely will differ. The separate claims have much in common, but they are not joint and dependent, and they cannot be aggregated. See, e. g., Eagle Star Insurance Company v. Maltes, 313 F.2d 778 (5th Cir. 1963); Alfonso v. Hillsborough County Aviation Authority, 308 F.2d 724 (5th Cir. 1962); Niagara Fire Insurance Company v. Dyess Furniture Co., 292 F.2d 232 (5th Cir. 1961).

The Court finds, therefore, that the claim of *each* member of the putative class must be shown to have a value in excess of $10,000.00 before jurisdiction would attach under 28 U.S.C.A. § 1332 to permit the Court to go forward with a determination as to whether the other requirements of Rule 23 exist in the case.

Do each of the members of the proposed class have such claims? The answer, almost to a certainty, is no. A serious question was presented even as to the value of the Sigels' individual claim, and their contract has already matured, involves two oversized lots (rather than one regular lot), coupled with a claim of right to water frontage (as opposed to interior properties).

Any further exploration of this matter would be conjectural and premature, however, since the Plaintiffs have not *alleged* the existence of a class with respect to which the Court would have jurisdiction, i.e., an appropriate class consisting entirely of persons whose individual claims exceed $10,000.00 in value.

It follows that the Court lacks jurisdiction to proceed with this cause as a class action under Rule 23, and the case will continue henceforth only with respect to the claim of the named Plaintiffs, Martin M. Sigel and Katherine Sigel, his wife, individually.

5. The Plaintiffs' argument, in effect, would interpret and apply Rule 23 in a manner that many had *thought* to be the purpose and effect of the 1966 amendment prior to the decision in *Snyder*; and the fact that *Snyder* held otherwise has been the focal point of criticism in one of the treatises (7, Wright & Miller, Federal Practice and Procedure, § 1756, p. 558, et seq (1972)), and approbation in another (3B, Moore's Federal Practice, ¶ 23.95, notes 13 and 17 (2d Ed. 1972)).

6. See Alvarez v. Pan American Life Insurance Company, 375 F.2d 992 at 994–995 (5th Cir. 1967) for a ready comparison of the "old" and "new" rule, and the Court's description of a hybrid class under old Rule 23(a)(2) as one "involving *several* rights related to specific property."