**ELECTRONIC DATA SYSTEMS CORPORATION**

v.

**Frederick A. KINDER, Jr.**

**No. CA 3-6218-B.**

United States District Court,
N. D. Texas,
Dallas Division.

July 12, 1973.

E. Eldridge Goins, Jr., J. Edwin Fleming, Ernest E. Figari, Jr., Coke & Coke, Dallas, Tex., for plaintiff.

W. Richard Davis, William M. Rippey, Strasburger, Price, Kelton, Martin & Unis, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

HUGHES, District Judge.

On August 14, 1972, plaintiff Electronic Data Systems Corporation (EDS) filed its First Amended Original Petition in the 160th Judicial District Court for the State of Texas seeking specific performance through injunctive relief of an employment contract. A Petition for Removal was filed with this court on August 22, 1972, by defendant Frederick A. Kinder, Jr.

Defendant, in his Petition for Removal, asserted jurisdiction under 28 U.S.C. § 1332 (1970) contending EDS to be a Texas corporation with its principal place of business at Dallas, Texas, and himself to be a resident of Kansas. That Petition further stated " . . . the amount in controversy in said cause of action exceeds the sum of TEN THOUSAND AND NO/100 . . . ." At the time this Petition was filed, plaintiff was seeking only injunctive relief and no counterclaim had been filed by defendant. Subsequent to removal, defendant did file a counterclaim for $12,172.20 plus attorney fees and costs.

The threshold issue is whether this cause may be removed under 28 U.S. C. § 1441 (1970) when the alleged jurisdictional statute, 28 U.S.C. § 1332 (1970), requires a minimum amount in controversy in excess of $10,000.00.

■ It is well established that when a minimum amount in controversy is a prerequisite to federal jurisdiction, the party seeking to invoke that jurisdiction has the affirmative duty and burden of proving the requisite amount. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).

■ In the instance of a Petition for Removal, therefore, that burden rests with the defendant. Gaitor v. Peninsular & Occidental Steamship Co., 287 F. 2d 252 (5th Cir. 1961). *Accord,* 1A J. Moore, Federal Practice, Para. 0.157(6) at page 258 (1965).

■ Under 28 U.S.C. § 1446 (1970), a Petition for Removal may be filed before the defendant has filed an answer in the state court proceeding or asserted any counterclaim. When the Petition is filed, the allegations asserted therein should state sufficient facts to warrant removal, *i. e.* the forum federal court must possess prima facie jurisdiction from the Petition alone.

■ In this cause, the monetary prerequisite was satisfied by defendant's allegation of an amount in controversy in excess of $10,000.00. Under *Fed.R. Civ.P. Form 2* that allegation is alone sufficient to establish a prima facie minimum jurisdictional amount in controversy and there is no reason to rule otherwise in the case of a removal petition. Moreover, a careful analysis of defendant's counterclaim shows it be to a separate and independent cause of action that would be removable if sued upon alone and, therefore, within the scope of 28 U.S.C. § 1441(c) (1970).

This court holds, therefore, that jurisdiction lies under 28 U.S.C. § 1332 (1970).

EDS seeks injunctive relief to specifically enforce paragraph 5 of an employment agreement. Paragraph 5 reads as follows:

The Employee, as consideration of his employment, and in consideration of all the matter contained in the preceding paragraphs, and the information he will obtain as an employee of EDS agrees that during the term of this agreement and for a period of three (3) years thereafter, Employee shall not, directly or indirectly, individually or as an employee, partner, officer, director or stockholder, or in any other capacity whatsoever of any person, firm, partnership or corporation, (i) recruit, hire, assist others in recruiting or hiring, discuss employment with, or refer to others concerning employment, any person who is, or within the then preceding twelve months was, an employee of EDS or any subsidiary or affiliated company, or of any present, prospective or former customer of EDS or any subsidiary or affiliated company, (ii) compete with EDS or any subsidiary or affiliated company within two hundred (200) miles of any city in the United States in which EDS or any subsidiary or affiliated company does business, or (iii) use in competition with an EDS or subsidiary or affiliated company customer, prospective customer, or former customer, any of the methods, information, or systems developed by EDS

or any subsidiary or affiliated company or its customers, prospective customers, or former customers within two hundred (200) miles of any city where such customer, prospective customer, or former customer does business. Employee further agrees during the same period not to call upon, solicit, accept employment with, sell or endeavor to sell within the United States any customer, prospective customer, or former customer of EDS or any subsidiary or affiliated company. The term "prospective customer" as used herein shall mean such firms as EDS or any subsidiary or affiliated company has actively solicited within twelve months prior to the date of termination of Employee's employment hereunder.

Kinder, as his defense, alleges the restrictive covenants in the employment agreement to be unreasonable and in violation of the Anti-Trust Laws of Texas. He further asserts there was fraud in the inducement to enter into the contract. Finally, he counterclaims for overtime wages allegedly due under the Fair Labor Standards Act and a bonus of $2,500.00.

EDS is incorporated under the laws of the State of Texas and has its principal place of business in Dallas, Texas, although it conducts business in at least fifteen states and twenty major cities. It has customers or potential customers in other states. The corporation engages in data processing, computer programing, establishing data processing systems, and other activities related to the computer industry. A major business activity of EDS relates to computer processing of medicare payment applications.

Previously trained in the field of electronic data processing, Kinder was recruited by EDS during the summer of 1969. After discussing with various EDS personnel the organization of the company and the benefits of employment with EDS, Kinder signed an "Employment Agreement" on June 13, 1969, under the terms of which he was employed as a "Systems Engineer" salaried at $11,000.00 per annum.

By agreement with EDS management, Kinder began his employment on September 2, 1969, in the EDS operations center located in Kansas City, Kansas. In November, 1970, Kinder was transferred to Dallas, Texas, and later to California.

As a systems engineer, Kinder worked in a "team" of four to five men engaged in the development of a computer program that would mechanically process applications for payment of medicare claims.

On April 30, 1972, Kinder terminated his employment with EDS. Thereafter, he was employed by Systems Resources, Incorporated (SRI). Before and after Kinder became a SRI employee, SRI was in competition with EDS for the data processing market related to payment of medicare claims.

There are two methods for processing medicare payment claims: (1) the EDS Plan and (2) the Model Plan. The EDS Plan is a processing plan unique to EDS. This plan is specifically designed and programed for the state whose resident applications it processes. Thus, a computer programed under the EDS Plan to process applications of Texas residents would have to be modified to handle applications filed by residents of any other state. During his employment with EDS, Kinder worked on the development of an EDS Plan for Kansas, Texas and California.

The Model Plan is a processing plan devised by the Social Security Administration and is public information available to all persons or companies attempting to process medicare payment claims. When employed by SRI, Kinder worked exclusively on the Model Plan. At no time prior to his employment with SRI did Kinder have any contact with the Model Plan.

At trial a jury was empaneled and requested to answer special issues raised by the parties in their pleadings.

In response to plaintiff's Amended Complaint seeking injunctive relief for alleged violations of paragraph 5 of the EDS-Kinder Agreement, the jury in Special Issue No. 1 found that Kinder since leaving the employment of EDS:

(a) Did not disclose information to his employer relating to computer programs or data systems he learned about while employed by EDS,

(b) Did disclose to his employer the names of EDS Corporation employees,

(c) Did recruit, hire, assist his employer in recruiting or hiring, discussed employment with or referred to his employer for possible employment persons who were or who had been within the immediately preceding 12 months employed by EDS,

(d) Did not as an employee of SRI directly engage in competition with EDS,

(e) Did as an employee of SRI indirectly engage in competition with EDS,

(f) Did not as an employee of SRI directly use in competition with a customer, prospective customer, or former customer of EDS any of the methods, information, or systems developed by EDS,

(g) Did not as an employee of SRI indirectly use in competition with a customer, prospective customer, or former customer of EDS any of the methods, information, or systems developed by EDS, and

(h) Did not call upon, solicit, sell, or endeavor to sell within the United States to any customer, prospective customer, or former customer of EDS.

The findings of the jury on the issues relevant to plaintiff's cause of action are hereby adopted by this court except as to the issue of Kinder's indirect competition with EDS while employed by SRI.

This court specifically rejects that portion of the jury's verdict and holds there has been no indirect competition by Kinder with EDS. In so doing, this court focuses upon the meaning of the term "indirect" in Texas:

. . . circuitous, oblique; as, an indirect road; not leading to an aim

or result by the plainest cause or method or by obvious means, but obliquely or by remote means: roundabout; not resulting directly from an act or cause, but more or less remotely connected with or growing out of . . .

Maryland Cas. Co. v. Scharlack, D.C., 31 F.Supp. 931, 933, aff'd, 115 F.2d 719 (5th Cir. 1940).

To engage in indirect competition, Kinder must himself be the causal link between the competitor and EDS. It is not necessary that Kinder himself have initiated the competition, for that would be direct competition. However, he must personally have some causal connection with the alleged competition. In this case, there is not a scintilla of evidence that Kinder engaged in any act, either oral or physical, that could be construed as even inferring that he was engaged or was about to engage in competition with EDS. The mere act of entering into an employment relationship with an existing competitor of EDS is not sufficient by itself to constitute indirect competition with EDS by Kinder.

Moreover, Kinder's work for SRI was in an area of data processing distinct from that *practiced* by EDS. While employed by EDS, Kinder worked on the EDS Plan. While employed by SRI, Kinder worked on the Model Plan. There is no evidence that Kinder promoted, assisted in the promotion, or otherwise solicited any business from any person or corporation described in paragraph 5 by virtue of his previous association with EDS. Second, to constitute "indirect" competition, the employee himself must have a causal connection with the competition that infringes the restrictive covenant at issue. Kinder's employment at SRI was of a purely mechanical nature and totally passive as to the recruitment of additional business and, therefore, lacking in this causal element. Finally, this court notes that SRI and EDS were engaged in competition *before* Kinder became employed by EDS and no evidence was

presented that links Kinder to any post-SRI employment competition activity.

This court holds further that even if there were evidence of indirect competition by Kinder with EDS the restrictive covenants contained in paragraph 5 could not be enforced either because they are unreasonable or are not necessary for the protection of EDS' business and good will.

■ Although the parties to an employment agreement are generally free to draft their own agreement, it is for the courts, as a matter of law, to determine whether covenants of non-competition are reasonably limited as to both time and space and, therefore, enforceable. *See* Fidelity Union Life Ins. Co. v. Protective Life Ins. Co., 356 F.Supp. 1199 (N.D.Tex.1972), aff'd per curiam, 477 F.2d 594 (5th Cir. 1973); Weatherford Oil Tool Co. v. Campbell, 161 Tex. 310, 340 S.W.2d 950 (1960); Toch v. Eric Schuster Corp., 490 S.W.2d 618, 621 (Tex.Civ.App.1972), reh. den.

■ The restriction as to time in the EDS-Kinder Agreement is quite specific and reasonable: 3 years from the date of termination of employment.

The restriction as to space, however, is unreasonable under the *Weatherford* doctrine which is controlling in this cause. Like the covenants at issue in *Weatherford,* the EDS geographic restrictions on competition appear, at first blush, to be specific and logical. However, further examination shows the 200 mile territory set forth in paragraph 5 to be so vague and uncertain that Kinder could not terminate his employment with EDS and have any certainty as to a specific city or town in which he could engage in the data processing of medicare payment applications without being in violation of the Agreement. Under paragraph 5, the zone of non-competition is measured from any city in which EDS maintained business operations or in which was located an EDS customer, potential customer, subsidiary, or affiliated company. As the Texas Supreme Court stated in *Weatherford*:

If petitioner should extend its business operations into such territory, respondents are obligated by their contract to discontinue selling competing merchandise therein for the remainder of the year. Enforcement of the agreement in accordance with its terms would thus effectively prevent respondents from competing with petitioners anywhere in the world for the stipulated period.

161 Tex. 313, 340 S.W.2d at 952.

In view of the foregoing, this court holds the non-competition covenants in paragraph 5 of the EDS-Kinder Agreement to be unreasonable and, therefore, unenforceable and void.

■ However, even if these covenants were reasonable, this court holds the covenants to be unnecessary for the protection of EDS' business and, therefore, unenforceable.

■ The remedy of injunctive relief to specifically enforce a covenant of non-competition is a harsh remedy that is utilized only when necessary to protect the business of the employer. As stated by the Texas Supreme Court in *Weatherford*:

. . . the test usually stated for determining the validity of the covenant as written is whether it imposes any greater restraint than is reasonably necessary to protect the business and good will of the employer.

161 Tex. at 312, 340 S.W.2d at 951.

■ At trial, there was a plethora of evidence that EDS did not employ the Model Plan in processing medicare payment claims. Moreover, Kinder's work at SRI was exclusively on the Model Plan. At no time did SRI advertise that a former EDS employee was available to work on potential jobs. The Model Plan on which Kinder worked was public information and, therefore, Kinder's work cannot per se be classified as being competitive with EDS. Therefore, to restrain Kinder from working on a publically available data processing plan is inconsistent with the purpose of the cov-

enants of non-competition. That is, to enjoin Kinder will not lessen the competition facing EDS.

As to Kinder's allegation that the employment contract was void ab initio because of fraud and misrepresentation in the inducement, Kinder is estopped to assert the invalidity of that contract because he received the full benefits thereof. Daniel v. Goesl, 161 Tex. 490, 341 S.W.2d 892 (1960). *Accord,* Guion v. Guion, 475 S.W.2d 865 (Tex.Civ.App.1971), reh. den.

With respect to the counterclaims of Kinder, the jury in Special Issues No. 2 and 3 found that he was not an administrative employee or professional employee during his tenure with EDS, as those terms are used in the Fair Labor Standards Act.

In Special Issue No. 4, the jury found that EDS acted in good faith in conformity with and reliance upon the Department of Labor regulations pertinent to the Fair Labor Standards Act in not paying Kinder time and a half compensation for overtime hours exceeding 40 hours per work week. In Special Issue No. 5, the jury further found that EDS did not willfully fail to pay Kinder time and a half overtime compensation.

In view of the jury's findings on Special Issues No. 4 and 5, this court holds that Kinder is not entitled to a judgment on his counterclaim for overtime wages.

In Special Issues No. 6 and 7, the jury found that Kinder was promised a $2,500.00 bonus by his supervisors for his work on the EDS regular business team in San Francisco before the completion of the installation of the EDS Regular Business System there.

It is therefore ordered, adjudged and decreed that:

1. Frederick J. Kinder, Jr. be and he is hereby enjoined from the date of entry of this Order through April 30, 1975, from recruiting, hiring, or assisting others in recruiting or hiring, discussing employment with, or referring to others concerning employment, the name or identity of any person who is, or who within the immediately preceding twelve month period was, an employee of EDS or any subsidiary or affiliated company of EDS;

2. A judgment be and the same hereby is entered for Frederick J. Kinder, Jr. against EDS for the sum of twenty five hundred dollars and no/100 ($2,500.00);

3. Each party is to bear his own costs and attorney fees; and,

4. All other relief sought by either party be and the same hereby is denied.