**NATIONAL ORGANIZATION FOR WOMEN, et al., Plaintiffs,**

v.

**MUTUAL OF OMAHA INSURANCE CO., Defendant.**

**Civ. A. No. 84–2879.**

United States District Court, District of Columbia.

June 14, 1985.

Burton L. Raimi, Jeffrey L. Braun, Jan G. Zager, Rosenman, Colin, Freund, Lewis and Cohen, Washington, D.C., and Janet Armuth Wolkoff, Emily J. Spitzer, NOW Legal Defense Fund, New York City, for plaintiffs.

Vincent H. Cohen, Peter W. Tredick, Jean S. Moore, Hogan & Hartson, Washington, D.C., for defendant.

## MEMORANDUM OPINION

FLANNERY, District Judge.

This matter is before the court on the motion of plaintiff National Organization for Women ("NOW") and the other plaintiffs in this action to remand this case to the District of Columbia Superior Court on the ground that diversity jurisdiction does not lie in this court because the amount in controversy does not exceed $10,000.

### I. Background

This is a class action in which the plaintiffs are NOW on behalf of itself and its members, and two named plaintiffs, Kathy Bonk and Vickey Monrean on behalf of themselves and all other women similarly situated. The defendant is Mutual of Omaha Co., Inc. ("Mutual" or "Mutual of Omaha"). "The plaintiff class is composed of all women to whom Mutual of Omaha has in the past sold, offered or advertised for sale, or to whom Mutual of Omaha will in the future sell, offer or advertise for sale ... health insurance policies at prices that are higher than or different from the prices at which the same policies are made available to similarly situated men." Complaint ¶ 1. Plaintiffs complain that these practices by Mutual of Omaha violate the D.C. Human Rights Act, D.C.Code § 1–2519(a)(1) and (a)(2) (1982). In the complaint, NOW also made a claim alleging that defendant's acts "have caused NOW to divert resources to combat sex discrimination in insurance." Complaint ¶ 8. For this diversion, NOW seeks compensatory damages in an amount to be determined at trial.

### II. Discussion

The central issue in this motion to remand is whether the jurisdictional amount of $10,000 is present in this diversity action. Because this is a class action, two important Supreme Court cases establish the ground rules for the court's inquiry. In *Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), the

Supreme Court held that separate and distinct claims in class actions cannot be aggregated for the purpose of meeting the jurisdictional amount requirement of 28 U.S.C. § 1332 (diversity jurisdiction). 394 U.S. at 336, 89 S.Ct. at 1056–57. In *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), the Supreme Court further elaborated on *Snyder* and held that it was not enough in a diversity action that each of the *named* plaintiffs assert damages in excess of $10,-000 but rather each member of the class has to meet the amount, and maintenance of the action by any member of the class whose separate and distinct claim did not individually satisfy the jurisdictional amount was precluded. 414 U.S. at 293, 94 S.Ct. at 507.[1] Defendant's arguments are all attempts to avoid the implications of these two Supreme Court cases.

A.  Burden of Proof

■  In this removal action the burden of proof is on the defendant Mutual of Omaha to establish jurisdiction. *McNutt v. General Motors Acceptance Corp*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *see also Gaitor v. Peninsular & Occidental Steamship Co.*, 287 F.2d 252, 253–54 (5th Cir.1961); *Electronic Data Systems Corp. v. Kinder*, 360 F.Supp. 1044, 1047 (N.D.Tex.1973), *aff'd*, 497 F.2d 222 (5th Cir. 1974); 1A J. Moore, *Moore's Federal Practice* ¶ 0.157[6], at 131 (2d ed. 1985). Further, contrary to defendant's assertion at oral argument, although not discussed in its memoranda, the court is to base its determination on the nature of the action as stated in the complaint and thus is to assume for purposes of this motion that this action will proceed as a class action even though it is not yet certified as one. *City of Inglewood v. City of Los Angeles*, 451 F.2d 948, 951 (9th Cir.1971); 3B J. Moore, *Moore's Federal Practice* ¶ 23.50 (2d ed. 1985) ("In the interim between the commencement of the suit as a class action and the court's determination as to whether it may be so maintained it should be treated as a class suit").[2]

■  Defendant points to the legal certainty test set forth in *Saint Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938), to support the proposition that "[j]urisdiction will be found to exist unless the Court finds 'to a legal certainty' that the matter in controversy cannot exceed the sum or value of $10,000." Defendant's Opposition to Plaintiffs' Motion to Remand at 2. The *Saint Paul* case, however, did not address the situation in which it is *unclear* what amount of damages the plaintiff party sought, as is true here with regard to the NOW claim for attorneys' fees, the NOW claim for compensation for the diversion of resources, and the individual class claims. The Supreme Court in *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921) explained the rule in removal actions as follows:

> If a removal is effected, the plaintiff may, by a motion to remand ... take

---

1.  *Zahn* expressly dealt with class actions under Rule 23(b)(3). The same reasoning applies here, however, since the central point of *Zahn* is that all members of a class suing on separate and distinct claims must meet the jurisdictional amount. Plaintiffs in the instant action bring their suit under 23(b)(2) which normally contemplates injunctive relief. The court has not yet certified a class in this action under any of the provisions, but it does appear that an action under 23(b)(2) can also seek monetary relief. *See* 1 H. Newberg, *Newberg on Class Actions* § 1145, at 242, § 1355, at 490 (1977 & Supp. 1984) (action for injunctive relief does not automatically guarantee that the amount in controversy will be judged by the aggregate claims of all members).

2.  While the court holds that it is proper to treat this as a class action in deciding this motion, the court notes that even were it *not* to consider this a class action for the purposes of this motion, it still would not attribute *all* of the damages claimed for the purported class to the named class members only. Rather, the proper approach would be to determine that portion of the total amount claimed which is sought by the named plaintiffs. Using this approach the amount sought here similarly falls below the $10,000 threshold. *See Rosenberg v. GWV Travel, Inc.*, 480 F.Supp. 95, 96 (S.D.N.Y.1979).

issue with the statements in the petition. If he does, the issues so arising must be heard and determined by the District Court ... and at the hearing the petitioning defendant must take and carry the burden of proof, he being the actor in the removal proceeding.

257 U.S. at 97, 42 S.Ct. at 37 (citations omitted). *See also Gaitor v. Peninsular & Occidental Steamship Co.*, 287 F.2d 252, 254, 255 (5th Cir.1961) (defendants below did not make such affirmative showing at the time they sought removal to federal court as is specifically required by Congress with reference to jurisdictional amount.... [T]he key [to removal] is an affirmative showing by he who seeks entry of all the requisite factors of diversity jurisdiction, including amount in controversy ....”). Thus, defendant's attempt to vest the “legal certainty” phrase of the *St. Paul* case with a talismanic quality that prevents remand of cases where there is some doubt as to the amount to be recovered must be rejected.

B. § 1441(c) Removal

■ Defendant argues that under 28 U.S.C. § 1441(c) the entire case is removable to federal court because NOW's claim for the diversion of resources to fight insurance discrimination is a separate and independent claim which would be removable if sued upon alone. Section 1441(c) states:

(c) Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not within its original jurisdiction.

The issue of when a claim is “separate and independent” under § 1441(c) is one that has caused no little confusion. Because it is not entirely clear when a claim is “separate and independent” for purposes of § 1441(c), courts are in apparent disagreement over whether an action in which multiple plaintiffs sue a defendant for a single wrong should be considered as consisting of “separate and independent” claims. Because the arguments for the position that these claims should not be considered “separate and independent” are amply set forth in the opinions that ascribe to this view, the court will not rehash those arguments here, but instead notes that it finds them persuasive. The Court of Appeals for the Second Circuit has recently explained:

The leading precedent interpreting § 1441(c) is *American Fire and Casualty Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951).

. . . .

*Finn* reads “separate and independent claim or cause of action” as a reference not to the variety of legal theories advanced but to the underlying occurrence or occurrences giving rise to the litigation.... [W]here the underlying occurrence or occurrences are so interwoven or so overlap as to be fairly described as inseparable, removal is not permitted.

*Gardner & Florence Call Cowles Foundation v. Empire, Inc.*, 754 F.2d 478, 481 (2d Cir.1985); see also *Strange v. Arkansas-Oklahoma Gas Corp.*, 534 F.Supp. 138, 141 (W.D.Ark.1981) (where plaintiffs allege severe injury by one happening, claims “may be separate, but they are not independent”); *Burnett v. Eastman Kodak Co.*, 433 F.Supp. 514 (E.D.Tenn.1977); *Schwartz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 424 F.Supp. 672, 674 (N.D.Cal.1976) (logic similar to that in *Finn* “will support the argument that removal is not available when multiple plaintiffs join their claims against a single defendant arising from a common wrong allegedly committed by that defendant”); 1A C. Wright, A. Miller & C. Cooper, *Federal Practice & Procedure* § 3724, at 387–8 (1985). (“Given the statute's perceived purpose of restricting the availability of removal, the Supreme Court's endorsement of a ‘single wrong’ test, and the requirements of most state joinder provisions, it is difficult to imagine how removal could be permitted in the case of multiple plaintiffs suing a single defend-

ant"). *But see Stokes v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 523 F.2d 433, 437 (6th Cir.1975) (suit by two account executives against defendant for claims relating to their profit sharing plan removable under § 1441(c) because even though one plaintiff's claim did not reach jurisdictional amount "each makes a separate claim for damages against defendant ... and the claims did not arise from a 'single wrong' of the defendant"); *Northside Iron & Metal Co. v. Dobson & Johnson, Inc.,* 480 F.2d 798, 801 (5th Cir.1973); (where each of eight subcontractors had claim that could have been sued upon if sued upon alone case was removable under § 1441(c) where seven of eight were of diverse citizenship and five of eight had claims exceeding jurisdictional amount); 1A J. Moore, *Moore's Federal Practice* ¶ 0.163 [4.–5], at 336 (2d ed. 1985) (if plaintiffs "having joined in the action because of a common question of law or fact, are proceeding to enforce rights that are individual to them, then the action involves separate and independent claims for removal purposes").

*Burnett, supra,* is a case which is very similar to the instant one. There, plaintiffs brought a suit alleging wrongful conduct on the part of the defendant in introducing a certain chemical into the Holston River, thus contaminating the city water supply and forcing the closing of a particular business. The complaint consisted of two counts. In the first, the partners of the business sought damages for its closing. The second count was a class action on behalf of the employees for lost wages, etc. Because count II lacked the requisite jurisdictional amount under *Zahn* and *Snyder, supra,* the court had to determine whether removal of the first claim was proper under § 1441(c). 433 F.Supp. at 516. It decided that removal was not proper because the plaintiffs were seeking "relief only for a single alleged wrong of the defendant, *viz.,* its causing or permitting the chemical ...

to be dumped" into the river. *Id.* at 517–18.

In this case NOW and the class plaintiffs are suing Mutual of Omaha for the single wrong of selling insurance policies to women at prices different from those charged men. Indeed, it would appear that NOW will only be successful in its diversion of resources claim if in fact class members have been wronged. The court finds that the claims of NOW and the claims of the class members are not separate and independent claims or causes of action for purposes of § 1441(c) removal.[3]

Thus, unless the defendant can show that this is a case in which it is proper to aggregate the claims of the class members, the case will have to be remanded. This is so because there is no conceivable way that the class described by the plaintiffs could be made up entirely—or even substantially—of claims of more than $10,000. First, one of the two named plaintiffs complains of having purchased a "Disability Income Protection" policy from Mutual for a cost of $177.30 per year. The second named plaintiff complains of having purchased a "Catastrophic Protection Plan" at a cost of $1,149.18 per year, and then claims that the same policy would have cost a similarly situated man $691.52 per year. The only evidence as to the value of relief to the individual class members to which defendant points is a fact sheet prepared by NOW when Congress was considering passing a Fair Insurance Practices Act in which NOW declares that a woman would have to pay approximately $11,500 more in lifetime premiums than a man for typical health and disability insurance policies. Yet this is not a class of persons claiming the difference in premiums paid over a lifetime. Further, even if this court were inclined to value the injunctive claim, in the face of monetary damage claims, the plaintiffs correctly point out that the fact sheet on which Mutual of Omaha relies as its only evidence to meet its burden uses rates

---

**3.** It is not at all clear to this court that the defendant has met its burden of showing that NOW's claim exceeds the jurisdictional limit.

In any event, the court concludes that it is not a "separate and independent" claim for purposes of § 1441(c).

from other insurance companies, not Mutual of Omaha, and is not discounted to reflect the present value of the injunctive relief.

Perhaps recognizing that the individual plaintiffs did not have damages that met the jurisdictional amount, the defendant raises various other theories to support jurisdiction in this court. The court finds that these, too, are not persuasive and that the case must be remanded.

### C. Aggregation of the Individual Claims in this Action

■ Defendant raises various arguments to support its view that the claims of the class members should be aggregated for purposes of determining the jurisdictional amount. The court notes at the outset that the case law on aggregation is more susceptible to clever manipulation by counsel than it is to reasoned analysis. In addition to engaging in the fine hairsplitting needed to distinguish cases in the area, the court in deciding that the claims in this case cannot be aggregated, is guided by three principles. First, this court is to construe its diversity jurisdiction narrowly. *E.g., City of Indianapolis v. Chase National Bank,* 314 U.S. 63, 76–77, 62 S.Ct. 15, 20, 86 L.Ed. 47 (1941). Second, as is shown *infra,* cases that have taken an expansive view of aggregation are most often cases that arose under federal question jurisdiction when that jurisdiction still had an "amount in controversy" component. In those cases, although it is never explicitly discussed, courts may well have been influenced by a desire to provide a federal forum for the vindication of federal rights. There is no similar reason to view aggregation expansively when jurisdiction is based on diversity of citizenship. Finally, although there are exceptions to the rule of *Snyder* and *Zahn,* lower courts should be careful not to broaden those exceptions to such an extent that the general rule would be swallowed by the exceptions to it. With these principles in mind, the court proceeds to the arguments for aggregation made by defendant.

### 1. *Aggregation Based on Enforcement of a Single Right*

The defendant's most promising theory and the one most difficult to deal with is that the claims of these class members can be aggregated because they are seeking to "enforce a single title or right." It relies on the following language from *Zahn:*

> When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount.

414 U.S. at 294, 94 S.Ct. at 508. Cases which allow aggregation under this theory may, for convenience, be called the "common fund" cases. Defendant relies on several cases which have allowed aggregation; those cases, though, contain language which suggests that the case at bar is distinguishable. For example, defendant cites *New Jersey Welfare Rights Organization v. Cahill,* 483 F.2d 723 (3d Cir. 1973). That case arose under federal question jurisdiction and concerned a class action brought on behalf of all welfare recipients in the state of New Jersey. *Id.* at 725 n. 2. The court allowed aggregation and declared:

> When, as here, the adversary of the class has no interest in how the claim is to be distributed among members of the class, none of the class members could bring suit without affecting rights of other class members, and the rights asserted are common to the class rather than individually held, aggregation is allowed.

*Id.*

While it can be argued that the case at bar literally meets the test laid out in *New Jersey Welfare Rights Organization,* a closer look at the cases reveals that one factor involved in the resolution of this issue is whether the plaintiffs possess a common interest that belonged *exclusively*

to the group. *See Cass Clay, Inc. v. Northwestern Public Service Co.*, 63 F.R.D. 34, 38 (D.S.D.1974). As the *Cass Clay* court explained: "In other words, if individual members of the class could not as a matter of law bring suit other than in a representative capacity, then the interests were common and undivided." *Id.* The *Cass Clay* case involved a suit by a group of consumers of electricity to recover money that the utility had promised to pay over to consumers and allegedly did not. The court permitted aggregation. Similarly, in the case relied on by defendant, *Berman v. Narragansett Racing Association*, 414 F.2d 311 (1st Cir.1969), *cert. denied*, 396 U.S. 1037, 90 S.Ct. 682, 24 L.Ed.2d 681 (1970), the class in question consisted of licensed owners of horses that had won purses at the defendants' race tracks. "[T]he gravamen of the complaint is that for over three decades the defendants had failed to pay to the plaintiff pursewinners certain monies alleged to be theirs under annual purse agreements." *Id.* at 312. In *Berman*, in allowing aggregation the court relied on the fact that "[n]o contractual rights are created between the defendants and individual pursewinners, and plaintiffs make no specific claims for individual payments." *Id.* at 315. *See also Bass v. Rockefeller*, 331 F.Supp. 945, 951 (S.D.N.Y.1971) (allowing aggregation: "[A]s in *Berman*, the plaintiffs herein make no specific claims for individual payment, and it is seriously doubted if they could; the absence of contractual rights between the parties is a significant factual similarity between the present suit and the one in *Berman*"), *vacated as moot*, 464 F.2d 1300 (2d Cir. 1971).

Other cases focus on the fact that the plaintiff group is attempting to recover some fund to which it has a right. *See,* e.g., *Dierks v. Thompson*, 414 F.2d 453, 456 (1st Cir.1969) (challenge of former employees to a distribution arrangement from a pension fund; "[s]ince plaintiffs ... are seeking to establish a trust fund as distinguished from individual cash claims against the defendants, however, we are satisfied ... that this is a proper class suit") (citing *Berman* ); *National Welfare Rights Organization v. Weinberger*, 377 F.Supp. 861, 866 (D.D.C.1974) (Pratt, J.) (jurisdiction invoked under § 1331; "The Court in this case is ... faced with the Government's administration of a multi-billion dollar trust fund settled by Congress for the benefit of a vast number of individuals").[4]

The cases in which aggregation has been disallowed resemble more the case at bar. *See, e.g., Sigel v. General Development Corp.*, 59 F.R.D. 577 (M.D.Fla.1973) (class action by purchasers of land against developer seeking specific performance relative to contracts for the purchase of land); *Mattingly v. Elias*, 325 F.Supp. 1374, 1382 (E.D.Pa.1971), *aff'd in part, rev'd in part*, 482 F.2d 526 (3d Cir.1973) (class action by tenants against corporate landlord; aggregation disallowed because the "rights of plaintiff tenants appear to arise only from the status of each as individual lessee of a portion of the project premises") (citation omitted).

The case of *Dougall v. Sugarman*, 330 F.Supp. 265 (S.D.N.Y.1971) appears very similar to the instant action. In *Dougall* a group of aliens challenged on due process and equal protection grounds, a New York law that made non-citizens ineligible for appointment to certain civil service jobs. *Id.* at 267. Plaintiffs urged that their dismissal from their jobs merely because they were not American citizens violated these constitutional rights. The court ruled that "the claims of the class members being

---

**4.** One case that has denied aggregation correctly points out that *all class actions* by their very nature will have questions of law or fact common to all claims. *See Sigel v. General Development Corp.*, 59 F.R.D. 577 (M.D.Fla.1973) (mere fact that there are questions of law or fact common to the class ... sufficient to justify maintenance as a class suit does not necessarily compel corollary conclusion that the individual claims may be aggregated for jurisdictional purposes). Rule 23(b)(2), for example, by its very language requires that "the party opposing the class has acted or refused to act on grounds generally applicable to the class...." Fed.R. Civ.P. 23(b)(2). Yet, all 23(b)(2) class actions are not ones in which aggregation is possible.

separate and distinct, may not be added together." *Id.* Similarly, in *Dane v. Southwestern Bell Telephone Co.,* 352 F.Supp. 257 (W.D.Okla.1972) the court refused to allow aggregation in a suit in which a class composed of various residents of a particular area sued claiming that defendant made false representations to the class concerning the type of telephone service that would be afforded them under a certain plan put into effect by defendant. *Id.* at 258.

■ Ultimately the cases do not reveal a distinction that is easy to articulate; some generalizations are possible, however. First, many of the cases that permit aggregation were federal question cases in which the court may have been stretching to find a way to provide a federal forum to vindicate federal rights. *E.g., New Jersey Welfare Rights* and *National Welfare Rights Organization, supra.* Second, the cases that allow aggregation often speak of the presence of some fund to which a plaintiff class is seeking access. *E.g., Dierks* and *National Welfare Rights Organization, supra.* Finally, they often involve an attempt to enforce a right that belongs to a group. *E.g., Berman* and *Bass, supra.* Although the matter is not entirely free from doubt, the court holds that because these elements are missing from the case at bar, this is not a case in which aggregation is permitted. The instant action is a diversity action; each class member could presumably have sued on her own behalf, and damage claims will be individualized.[5]

2. *Aggregation based on Cost to Defendant*

■ Defendant next argues that because plaintiffs also seek injunctive relief in this action the court can determine the jurisdictional amount by looking to the cost to the defendant of complying with any equitable relief ordered in this action. Defendant represents by way of affidavit that such cost would exceed $10,000. To support its argument defendant relies on cases of this circuit in which the court allowed the jurisdictional amount to be met by looking to the defendants' cost of compliance. *Smith v. Washington,* 593 F.2d 1097, 1099 (D.C. Cir.1978); *Committee for GI Rights v. Callaway,* 518 F.2d 466, 473 (D.C.Cir.1975); *Tatum v. Laird,* 444 F.2d 947, 951 (D.C. Cir.1971), *rev'd on other grounds,* 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). As plaintiffs point out, however, in none of these cases was a plaintiff seeking *both*

---

5. The section of the D.C. Human Rights law on which the suit is based prohibits discrimination based on, *inter alia,* the sex of any "individual," and speaks of the denial to "any person" of the full and equal enjoyment of goods, services, etc. D.C.Code Ann. § 1–2519 (1981 & Supp.1984). Further, in their Superior Court complaint plaintiffs based jurisdiction on D.C.Code Ann. § 1–2556(a) which provides a private right of action to "any person claiming to be aggrieved by an unlawful discriminatory practice...." Thus, it would appear that this suit presents individual claims.

In Defendant's Supplemental Exhibits in Support of Its Opposition to Plaintiffs' Motion to Remand defendant argues that somehow the fact that NOW is bringing this suit as part of some coordinated strategy should affect a determination that this is a suit to protect a "common and undivided interest." They cite no case to support this proposition—and their argument amounts to little more than saying that anytime people can get together to plan a class suit the nonaggregation rule of *Snyder* and *Zahn* can be avoided. The court will not read the aggregation cases to create such a broad exception.

Finally, the court notes that defendant relies on this court's opinion in *Honey v. George Hyman Construction Co.,* 63 F.R.D. 443, 449 (D.D. C.1974). That case on its facts is not helpful. There the court held that an insurer and partial subrogee were found to share a common and undivided interest with an insured. In that opinion this court cited the same language in *Snyder* that is relevant in this case concerning cases in which several plaintiffs unite to enforce a single title or right, and declared:

Deceptively clear on its face, this rule has caused a host of problems for those courts compelled to apply it and has resulted in conflicting, if not contradictory, decisions. This state of affairs has led one court to note that "difficult it is to draw a general rule or a rationale from the decisions other than the broad rules stated above. Language to support either conclusion in a case such as the present one can be found." *Dixon v. Northwestern National Bank,* 276 F.Supp. 96, 100 (D.Minn.1967).

63 F.R.D. at 449.

equitable and money damages. Further, all of these cases arose under the court's federal question jurisdiction and involved constitutional issues.

Plaintiffs have pointed to cases from other circuits in which courts have explicitly considered whether in a diversity class action in which damages *and* injunctive relief are sought a court can determine the amount in controversy from the defendant's viewpoint. Two circuits have held that a court cannot view the damage issue from the viewpoint of the defendant in such cases, reasoning that to do so would be an unwarranted circumvention of the rule laid down in *Snyder, supra.* Courts that do not permit the defendant's viewpoint to control argue that viewing the jurisdictional amount issue from the defendant's point of view is simply another way of aggregating claims which is what the Supreme Court disallowed in *Snyder. See Snow v. Ford Motor Co.,* 561 F.2d 787 (9th Cir.1977); *Lonnquist v. J.C. Penney Co.,* 421 F.2d 597 (10th Cir.1970).

The Ninth Circuit Court of Appeals in *Snow* explained:

> We agree that *Snyder* is controlling. "Total detriment" is basically the same as aggregation. The only reason the injunction is worth more than $10,000 to Ford is that it would affect all of Ford's future trailer package sales to thousands of other individual consumers. In short, we hold that, where "the equitable relief sought is but a means through which the individual claims may be satisfied, the ban on aggregation [applies] with equal force to the equitable as well as the monetary relief.

561 F.2d at 790. Plaintiffs argue persuasively that to allow the defendant's view test to be used whenever injunctive relief is sought along with damages in a class action would undermine the holdings of *Zahn* and *Snyder:*

> To uphold defendant's position in the present case would allow a plaintiff who has no claim for the requisite compensatory damages merely to request injunctive relief, assign to that request a value

measured in terms of defendant's compliance, and then litigate in the federal courts. If *Zahn* and *Snyder* mean anything at all, they stand for the proposition that federal courts should take a strict view in interpreting their diversity jurisdiction. Such an approach precludes the application of the defendant's view test and it forecloses, in the instant case, defendant's access to this Court.

Plaintiffs' Reply at 14–15. This court will not apply the defendant's view test to this diversity action which seeks both damages and injunctive relief.

### 3. *Aggregation of Attorneys' Fees*

Defendant further seeks to avoid the no aggregation rule by asking the court to focus on the fact that plaintiffs have also requested attorneys' fees that they argue will be sure to amount to more than $10,-000. Although they cite support for the proposition that attorneys' fees can be considered as part of the jurisdictional amount, *see Clark v. National Travelers Life Insurance Co.,* 518 F.2d 1167 (6th Cir.1975), they cite to no case in which attorneys' fees were aggregated in a *class action* so that the jurisdictional amount could be met.

Plaintiffs, however, point to authority for the proposition that in class actions one cannot aggregate the amount of attorneys' fees in order to meet the jurisdictional amount. They rely on *Goldberg v. CPC International, Inc.,* 678 F.2d 1365 (9th Cir. 1982), *cert. denied,* 459 U.S. 945, 103 S.Ct. 259, 74 L.Ed.2d 202 (1982), in which the Ninth Circuit addressed this point directly. In *Goldberg,* as in this case, defendants in a class action removed the case to the federal district court claiming diversity jurisdiction. "Defendants (CPC) alleged that the $10,000.00 amount in controversy requirement of 28 U.S.C. § 1332 was satisfied, despite the small individual claims of the class members, because plaintiffs' potential attorneys' fees would exceed that amount.... The issue is whether the jurisdictional amount in controversy is satisfied. We find that it is not." *Id.* at 1366–67. In *Goldberg* the circuit court expressly rejected the view that the attorneys' fees

should be considered as payable only to the named plaintiffs, or that they should be attributed to the class as a whole and treated as a common fund.

The court concluded:

We find that acceptance of either of CPC's theories would conflict with the policy of *Zahn v. International Paper Co.* in which the Supreme Court reaffirmed that the "matter in controversy" requirement must be satisfied by each member of · the plaintiff class. Plaintiffs whose claims fall short cannot satisfy the requirement by aggregation of claims. CPC's theories would seriously undermine and are contrary to the rule expressed by the Supreme Court in *Zahn.* Thus we conclude that the potential attorneys' fees do not satisfy the jurisdictional amount and that there is, therefore, no federal jurisdiction.

*Id.* at 1367.

Because the reasoning of the case is sound, the court finds *Goldberg* dispositive of this issue and concludes that the amount of requested attorneys' fees cannot be aggregated for determining the jurisdictional amount.

III.  Conclusion

The court concludes that the defendant has not met its burden upon removal of demonstrating that this court can exercise jurisdiction over this action; therefore this case must be remanded to the District of Columbia Superior Court.