483 F.2d 723
 NEW JERSEY WELFARE RIGHTS ORGANIZATION et al.
v.
William T. CAHILL, in his capacity as Governor and Chief
Executive officer of the State of New Jersey, et
al. New Jersey Welfare Rights
Organization et al., Appellants.
 No. 72-2077.
 United States Court of Appeals.
Third Circuit.
 Argued May 17, 1973.
Decided Aug. 10, 1973.
As Amended Aug. 28, 1973.
 
 Michael C. Parks, Gerard J. Clark, Newark Essex Joint Law Reform Project, Newark, N. J., for appellants.
 Stephen Skillman, Asst. Atty. Gen., George F. Kugler, Jr., Atty. Gen., Dept. of Law & Public Safety, Trenton, N. J., for appellees.
 Before VAN DUSEN and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 PER CURIAM.
 
 
 1
 This appeal raises the important question whether administrative changes instituted in 1971 by New Jersey in its program of Aid to Families with Dependent Children (AFDC) violated federal statutory requirements. The United States District Court for the District of New Jersey held that the state did not violate Social Security Act Sec. 402(a)(23), 42 U.S.C. Sec. 602(a)(23), when it converted its method of evaluating family needs from a case-by-case cost to a flat grant state-wide average method.[1] We affirm.[2]
 
 
 2
 In an attempt to reform the state's welfare system, improve its efficiency and eliminate inequities, New Jersey converted in 1971 to a system which evaluated recipient needs on the basis of a state-wide average of family needs. Basically, what the state did was to compute the average need of a random sample of welfare recipients in the state with use of the data it had compiled in the past on family-by-family needs. The result was a flat grant sum, which varied from family to family with respect only to family size. The inevitable result of such an averaging was that the state's calculated need for some families decreased, while the calculated need for other families increased. Also as a result of the averaging process, some families with incomes previously eligible for welfare became ineligible, and, conversely, previously ineligible families became eligible. As New Jersey pays eligible recipients 100% of need, the result was also to increase some AFDC families' welfare payments while decreasing others.
 
 
 3
 Appellants contend the methods used by New Jersey in calculating the flat grant needs were contrary to the statutory mandate of 42 U.S.C. Sec. 602(a)(23):
 
 
 4
 [The States shall] provide that by July 1, 1969, the amounts used by the State to determine the needs of individuals will have been adjusted to reflect fully changes in living costs since such amounts were established, and any maximums that the State imposes on the amount of aid paid to families will have been proportionately adjusted.
 
 
 5
 In an opinion which carefully and extensively examined the legislative history of Sec. 602(a)(23), Justice Harlan, in Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), found "two broad purposes" in the statute:
 
 
 6
 First to require States to face up realistically to the magnitude of the public assistance requirement and lay bare the extent to which their programs fall short of fulfilling actual need; second, to prod the States to apportion their payments on a more equitable basis.
 
 
 7
 397 U.S. at 412-413, 90 S.Ct. at 1218. Consistent with those broad purposes, the Court said, conversion to a flat grant system, such as New Jersey's, was permissible for purposes of administrative efficiency, if that purpose was not achieved "at the expense of significantly reducing the content of the standard of need." The Court explicated what it considered a significant reduction in the standard of need by detailing the statute's requirements when a state consolidates items on the basis of statistical averaging:
 
 
 8
 Providing all factors in the old equation are accounted for and fairly priced and providing the consolidation on a statistical basis reflects a fair averaging, a State may, of course, consistently with Sec. 402(a)(23) redefine its method for determining need.
 
 
 9
 397 U.S. at 419, 90 S.Ct. at 1221.
 
 
 10
 Appellants attack the New Jersey consolidation of needs in two basic respects. They argue that they demonstrated in the district court both (1) that some factors of need accounted for prior to 1971 were left out of the equation in calculating the FAM flat grants; and (2) that the methodology used by the state was not a "fair" averaging based on "fairly priced" data.
 
 
 11
 With respect to appellants' first major contention, the district court could find in the great mass of oral and written evidence no indication that in averaging shelter and special circumstance needs, New Jersey left any need factor out of the equation:
 
 
 12
 Nothing has been left out of the averaging, nor has anything been priced at less than actual cost.
 
 
 13
 349 F.Supp. at 512. After close examination of appellants' brief and of the record, we can find no basis for a determination that the district court was clearly erroneous in so finding. We find no evidence in the record of the existence of any shelter or special circumstance need which New Jersey recognized before 1971 which was not used in calculating the FAM flat grant averages.
 
 
 14
 Appellants argue that because pre-1971 need calculations were based on actual costs, inflation was a "factor" of need which had been accounted for previously but which was disregarded in the flat grants. New Jersey has not incorporated into FAM any provision for changing need figures due to fluctuations in the cost of living after July 1, 1971; thus, the automatic changes due to inflation which previously had existed no longer prevail. We do not, however, consider inflation a "factor" of need as that term was used in Rosado.
 
 
 15
 In holding in Rosado that New York had violated Sec. 602(a)(23), the Supreme Court found the factors left out of the equation were "particular items such as laundry and telephones." 397 U.S. at 418, 90 S.Ct. at 1221. On remand, 322 F.Supp. 1173 (E.D.N.Y.), aff'd, 437 F. 2d 619 (2d Cir. 1970), aff'd mem., 402 U.S. 991, 91 S.Ct. 2169, 29 L.Ed.2d 157 (1971), in considering a New York welfare program which had previously, like New Jersey's, accounted for some need items on the basis of cost, the district court did not discuss inflation as a factor of need, although it did very carefully canvass in a lengthy opinion all conceivable need factors. The Supreme Court's discussion of the legislative history of Sec. 602(a)(23) confirms our understanding that inflation was not to be considered a factor of need which could not be eliminated in a consolidation. Early drafts of Sec. 602(a)(23) would have required states to annually review need standards "for up-dating such standards to take into account changes in living costs." But, as Justice Harlan noted, such legislation "was stillborn." 397 U. S. at 410, 90 S.Ct. at 1217. Legislative compromise resulted in a requirement that there be only a one-time adjustment to reflect changes in the cost of living, as of July 1, 1969.
 
 
 16
 With respect to appellants' second major contention, the district court rejected the argument that by "fairly priced" and "fair averaging" the Supreme Court meant to imply a qualitative statutory requirement. It said:
 
 
 17
 The Supreme Court apparently intended the term "fair averaging" to apply to the technical statistical process rather than to any qualitative review of the components of the averages . . . .
 
 
 18
 "[F]airly priced" does not mean what the price would be by market standards or what would be required for a decent existence, but rather by what the price actually is.
 
 
 19
 349 F.Supp. at 510-511. We agree. Although appellants argue forcefully that the district court's interpretation of "fair averaging" must be incorrect as there is no such term in the discipline of statistics, we cannot find in Rosado any statistical analysis which would indicate the Court was speaking in such an academic sense that use of the unscientific term "fair averaging" would necessarily imply qualitative analysis. We interpret the use of the term to be quite simply a layman's recognition that statistics can often be manipulated in a misleading manner and an admonition that the data and statistics not be used "unfairly."
 
 
 20
 Appellants argue, inter alia, that mean averaging of shelter costs creates an average figure far below housing costs in some areas of the state, consolidation and averaging of special circumstances need results in an average need far below the real need of families actually confronted with special circumstances need, averaging of need items which are not regular and predictable is unsound, and inclusion of public housing rental cost data was an error because few welfare recipients can find available public housing. The thrust of these arguments is that any averaging process is "unfair" to many welfare recipients. While it is conceded that the result of averaging may reduced welfare payments to many families and increase the grants to others, Sec. 602(a)(23), as interpreted by Rosado, does not proscribe such a result. We find in none of these arguments, or in the supporting data advanced on behalf of each, an indication that New Jersey used data which was not "fairly priced" or that "fair averaging" was not employed.
 
 
 21
 Our function is not to weigh the wisdom, the weaknesses or the virtues of the consolidated flat grant system of benefits adopted by New Jersey in its AFDC welfare program. Our grave task is to ascertain whether on the record before us the system offends the applicable statutory mandate and the admonitions of the Supreme Court in Rosado v. Wyman. We find no violation.
 
 
 22
 The judgment of the district court will be affirmed.
 
 
 
 [1]
 A more detailed examination of the facts here is in the district court opinion. 349 F.Supp. 501 (D.N.J.1972)
 
 
 [2]
 When this proceeding was originally before us on appeal, we remanded with certain specific directions, "in light of its importance to both the State of New Jersey and its citizens." We also directed that certain counts, not now before us, be referred to a three judge court pursuant to 28 U.S.C. Secs. 2281, 2284, because those counts presented a substantial constitutional question. New Jersey Welfare Rights Organization v. Cahill, 448 F.2d 1247 (3d Cir. 1971). On this appeal, the state argues that federal jurisdiction is lacking in the instant suit
 Because pendent jurisdiction was found for the federal statutory claim in Rosado v. Wyman, 397 U.S. 397, 405 n. 7, 90 S. Ct. 1207, 25 L.Ed.2d 442 (1970), the jurisdictional issue before us in this case was there left undecided. Although we doubt that jurisdiction could be found on the alleged statutory bases of 28 U.S.C. Secs. 1337 or 1343, we do find jurisdiction on the third alleged ground: 28 U.S.C. Sec. 1331, the general federal question provision.
 Although no individual here was shown to meet the statute's $10,000 amount-in-controversy requirement, this is a class action brought on behalf of all welfare recipients in New Jersey. In holding that the 1966 amendment to Rule 23 of the Federal Rules of Civil Procedure did not alter the principles for determining whether claims could be aggregated in class actions, the Supreme Court in Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), reaffirmed the principle that "[a]ggregation has been permitted . . . in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." 394 U.S. at 335, 89 S.Ct. at 1056.
 When, as here, the adversary of the class has no interest in how the claim is to be distributed among members of the class, none of the class members could bring suit without affecting rights of other class members, and the rights asserted are common to the class rather than individually held, aggregation is allowed. See Bass v. Rockefeller, 331 F. Supp. 945 (S.D.N.Y.), appeal dismissed as moot, 464 F.2d 1300 (2d Cir. 1971).
 The issues raised here involved federal statutory interpretation affecting the expenditure of many millions of federal dollars in the State of New Jersey. They are not trivial, and allowing aggregation of these claims does not encourage cluttering the federal courts with minor controversies involving matters of state law.