STATE OF NEW JERSEY, DEPARTMENT OF HUMAN SER-
VICES, DIVISION OF PUBLIC WELFARE *ET AL.*, PLAIN-
TIFFS, v. JOSEPH R. MALONE, III, MAYOR, CITY OF
BORDENTOWN, *ET ALS.*, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided November 21, 1978.

Mr. John J. Degnan, Attorney General of New Jersey, attorney for plaintiffs (Ms. Andrea Silkowitz, Deputy Attorney General, appearing).

Camden Regional Legal Services, Inc., attorney for intervening plaintiffs (Ms. Patricia Richmond LeBon appearing).

Messrs. Kessler, Tutek and Gottlieb, attorneys for defendants (Mr. Myron H. Gottlieb appearing).

WOOD, J. S. C. Plaintiffs State of New Jersey, Department of Human Services; Ann Klein, Commissioner, Department of Human Services, and G. Thomas Riti, Director, Division of Public Welfare (hereafter collectively referred to as the State), have instituted this action against defendants City of Bordentown, its Mayor and Board of Commissioners, and its Local Assistance Board and the members thereof, alleging in substance that defendants are operating and administering the local general assistance program in violation of the General Public Assistance Law, *N. J. S. A.* 44:8-107 *et seq.*

Two residents of the City of Bordentown, Mary E. Eltonhead and Joseph DeSilvia, have by motion sought leave to intervene as plaintiffs, representing themselves to be needy persons qualified to receive assistance under the general assistance program and to have been denied such assistance. Their motion was made on short notice on the day of the return and argument of the State's present application for interlocutory relief. The motion for leave to intervene was granted and the complaint of the intervenors was filed, but their individual applications for relief are not considered here, defendants obviously requiring reasonable time to consider and answer them.

The State contends that such operation is both illegal and detrimental to the public interest, and seeks judgment restraining such illegal operation and ordering that defendants operate and administer the program in compliance with the applicable laws and regulations promulgated thereunder by the Commissioner. This matter is before the court on order to show cause why an interlocutory injunction should not be granted forthwith restraining defendants from thus violating the law and mandating corrective action to comply therewith.

The essential facts are not disputed. Prior to August 1, 1978 the general assistance program in the City of Bordentown was being conducted in compliance with the law. It was administered by a Director of Welfare, Mrs. Beatrice

Busch (who was employed part-time), and supervised by defendant local assistance board, whose members were properly appointed by the mayor in accordance with *N. J. S. A.* 44:8–115. The city's provision of general assistance benefits was facilitated by receipt of 75% funding by the State.

On August 1, 1978 Mrs. Busch resigned from the position of director of welfare, for the stated reason that the duties of the office were too burdensome to be handled properly by a part-time employee. Previously, on July 24, 1978, the board of commissioners voted to discontinue receipt of state general assistance funds and to administer the program locally without the employment of a municipal director of welfare. About the same time all five members of the local assistance board tendered their resignations therefrom. No action has been taken to appoint a director of welfare to replace Mrs. Busch, nor has any action been taken to appoint new members to the local assistance board.

Since August 1, 1978 the board of commissioners has undertaken to administer the local assistance program. The mayor has assumed the duties of director of welfare. Applications for public assistance are received and reviewed on days of regularly scheduled meetings of the board of commissioners, and then only in the hour directly preceding such meetings. An independent and locally administered "work system" has been established, with applicants required to do certain work, generally of a menial nature, for the municipality as a condition of any grant of public assistance. The State contends that needy residents of the City of Bordentown who are qualified to receive assistance are, by reason of these restrictive requirements, being denied in whole or in part the assistance benefits to which, under the statute, they are entitled.

The General Public Assistance Law mandates that every municipality in the State shall establish and administer a general assistance program. *N. J. S. A.* 44:8–114 provides:

Every municipality shall provide public assistance to persons eligible thereto * * * which shall be administered by a local assistance board according to law and in accordance with this act and with such rules and regulations as may be promulgated by the commissioner.

The cost of such assistance may be paid by the State to the extent of 75% of each year's "public assistance loan." *N. J. S. A.* 44:8–129. But while a municipality may elect not to apply for or receive State aid, and to finance its assistance program exclusively from its own funds, such election does not alter or derogate from its obligation to provide public assistance and to conduct its program in accordance with the statute and with rules and regulations promulgated by the Commissioner thereunder. *Ricker v. Lawson,* 155 *N. J. Super.* 536 (Cty. Ct. 1977). Indeed, defendants do not dispute that they are bound to so provide assistance in accordance with the law. *Cf. General Assistance Manual* § 10:85–2.1.

The State contends that the law is being violated by defendants in several respects: (1) the program is administered by persons who at the same time are holding political office, contrary to *N. J. S. A.* 44:8–117; (2) the program is being conducted without the supervision of a legally appointed local assistance board; (3) the establishment of a requirement of work by public assistance recipients as directed by the municipality is contrary to the statutory directive that compensatory work shall be only such as is assigned by the New Jersey Employment Service, *N. J. S. A.* 44:8–114. For reasons hereafter to be stated, I consider all of the above points to be well taken. Administration of the program as stated is in violation of the statute and must be restrained.

Defendants contend initially that this action must be dismissed because the State lacks standing to bring the action, since it is not a person aggrieved by any alleged conduct of the public assistance program. The contention is clearly without merit. *N. J. S. A.* 44:8–109 declares it to be the public policy of this State that

* * * every needy person shall, while in this State, be entitled to receive such public assistance as may be appropriate with reference to need of a category of persons and whether or not such persons are employable, and that the furnishing of such public assistance is primarily the duty of the municipalities and civic and charitable organizations but that all needy persons not otherwise provided for under the laws of the State shall hereafter receive public assistance pursuant to law and the provisions of this act.

Administration of the program is delegated generally to municipalities, but subject to the act and to regulations promulgated by the Commissioner, which are to be binding on municipalities *N. J. S. A.* 44:8–111(d). The safeguarding of the rights of needy persons entitled to assistance is the responsibility of the Commissioner. Obviously, it is not to be left to poor and needy and often ignorant persons to seek redress in this manner when they deem their rights violated. Such protection is the very object of the law and is to be afforded by the public agency charged with administering it. The standing of the State to invoke the aid of the court in the enforcement of the law and the effectuation of its purposes is crystal clear.

Defendants argue that the law is presently being properly administered by the city. The admitted facts totally negate that contention. Let me here consider *seriatim* the points of illegality raised by the State.

█ 1. The program is being administered by persons holding other political office. Defendants admit this, but deny that it is contrary to the statute. I emphatically disagree. *N. J. S. A.* 44:8–117 provides in part:

No employee of any welfare department of a municipality whose compensation is paid from funds received or appropriated for public assistance or the administration thereof in any manner shall hold any office in any political party.

Defendants argue that the mayor and commissioners are not officers of a political party, are elected without designation of party affiliation and, therefore, are not prohibited from

acting as administrator of the public assistance program. The argument distorts the clear meaning of the statute. It is obvious that the mayor and commissioners hold political office. *N. J. S. A.* 44:8–117 by its terms does not authorize any person who has been elected to public office to serve as municipal welfare director, or authorize the governing body itself to assume the functions of the Local Assistance Board or municipal welfare director. Indeed, *N. J. S. A.* 44:8–116 specifically prohibits more than one member of the governing body to serve on the local assistance board. Moreover, *N. J. S. A.* 44:8–112(a) authorizes the Commissioner to "determine and prescribe the number and qualifications of the personnel employed or to be employed in administering public assistance in each of the municipalities" and by regulations duly promulgated elected officials are prohibited from administering the general assistance program, as inconsistent with the statute. *General Assistance Manual* §§ 124 and 214.6; *N. J. A. C.* 10:85–1.2(d) and 10:85–2.2(d)(6). Moreover, by *N. J. S. A.* 44:8–126 the exploitation of welfare recipients for political purposes is specifically prohibited. The broad powers delegated to the Commissioner by *N. J. S. A.* 44:8–112(a), and the legislative expression of a policy of divorcing the administration of welfare entirely from the political sphere, make it clear that the general assistance program may not be administered by anyone who at the same time is involved in the political process. It follows that the undertaking by the mayor and commissioners so to administer the program is unlawful and must be discontinued.

2. The statute sets forth in clear and explicit terms that the general assistance program is to be administered by a local assistance board, the members of which shall be appointed as provided in *N. J. S. A.* 44:9–115 and shall serve for the terms set forth in *N. J. S. A.* 44:8–116. The board is charged with the duty appointing a director of welfare "who shall be the first executive and administrative officer of the board." *N. J. S. A.* 44:8–117. In the City

of Bordentown this mandate has been and continues to be violated. The director of welfare having resigned, the legally appointed local assistance board not only has not acted to appoint a new director but has purported to resign in a body, thus leaving the city without any legally constituted body to administer the general assistance program required by the statute. The State urges that the resignations of the members of the board are illegal and that they should be ordered to continue to serve until their successors are appointed. I cannot agree that the res'gnations are illegal. Resignation from the board is not prohibited by the terms of the statute. Indeed, resignations are contemplated by the inclusion therein of provisions for the filling of vacancies. Moreover, although on its face the collective and simultaneous resignation of all the members of the board would seem to be an abrogation of their sworn responsibility, I cannot say on the facts before me that there are not good and sufficient reasons for such resignations.

Granted the legality and propriety of the resignations, however, it clearly becomes the duty of the Mayor under the statute to appoint new members to the board without delay. Defendants contend that under the statute the mayor is not required to appoint new members until the expiration of the terms of the previously appointed members. The contention is absurd. The City and its needy residents may not thus be left without any legal machinery for the administration of the General Assistance Program and the rendering of aid to those requiring it and qualifying therefor. It is the duty of the mayor forthwith to appoint new members to the local assistance board to serve out the terms of those who have resigned.

 3. It remains to comment briefly on the imposition by the mayor and commissioner of work requirement as a condition for the receipt of public assistance. The local requirement has no sanction or authorization whatever. *N. J. S. A.* 44:8–114 provides that "employable persons receiving public assistance shall be required, except when

good cause exists to perform such public work as shall be assigned to them by the New Jersey State Employment Service." Defendants argue that the omission of a comma after the word "exists" renders the statute meaningless. I find it difficult to believe that such a semantic exercise can be seriously indulged in. The meaning of the statute is clear and unambiguous. Welfare recipients who are employable are to be required, unless there is good cause to the contrary, to perform work assigned to them by the New Jersey Employment Service. The statute contains detailed provisions for the referring of such persons to the Employment Service and their assignment by it to work within their capabilities. There is no provision or authority for the imposition by a municipal governing body of any work requirement.

Defendants are directed to cease and desist from operating the General Assistance Program in contravention of *N. J. S. A.* 44:8–111 *et seq.* and the regulations promulgated thereunder, which are hereby declared to be binding on defendants. Defendant Joseph R. Malone III, Mayor of the City of Bordentown, sha'l forthwith proceed to appoint, in compliance with the statute, new members of the local assistance board, to serve in the place and stead of the members who have resigned and until the expiration of the terms of such members as provided by law. The local assistance board shall promptly on taking office proceed to appoint a director of welfare to administer the general assistance program in compliance with the law. The appointment of new members of the local assistance board shall be made not later than December 15, 1978.

Until the appointment of such new board, and the appointment by it of a director of welfare, the board of commissioners shall continue to administer and conduct the general assistance program to the end that the immediate needs of persons qualified and applying for assistance may be promptly met.

Such interim operation shall in all other respects be in compliance with the statute and regulations as stated.

Specifically, no work requirements shall be imposed on any applicant save by referring each applicant to the New Jersey Employment Service. Such operation by the mayor and board of commissioners shall continue only until the appointment of members of the local assistance board, and such board's appointment of a director of welfare. Thereafter the mayor and board of commissioners shall perform only the duties incident to the operation of the general assistance program which are specifically required of them by statute.

This matter will be continued for hearing to be scheduled with respect to other demands for relief set forth in the complaints of the State and the intervening plaintiffs.