197 N.J. Super. 225 (1984)
484 A.2d 716
NEWARK DIVISION OF PUBLIC WELFARE, RESPONDENT-RESPONDENT,
v.
WILLIE RAGIN, PETITIONER-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 17, 1984.
Decided November 19, 1984.
*227 Before Judges KING, DEIGHAN and BILDER.
Rutgers Legal Aid Clinic, attorney for appellant (Elizabeth Inserra, on the brief).
Irwin I. Kimmelman, Attorney General of New Jersey, attorney for respondent Division of Public Welfare, Department of Human Services (James J. Ciancia, Assistant Attorney General, of counsel; Dennis J. Conklin, Deputy Attorney General, on the brief).
The opinion of the court was delivered by BILDER, J.A.D.
This is an appeal by a general assistance welfare recipient from a final decision of the Acting Director of the Division of Public Welfare sustaining the findings of an Administrative Law Judge that petitioner's benefits were properly suspended for failure to comply with general assistance employment requirements.
General assistance is a municipally administered welfare program supervised by the State. It is a residual or last resort *228 program designed to provide aid to needy persons not otherwise provided for under State laws. See Pascucci v. Vagott, 71 N.J. 40, 44, 362 A.2d 566 (1976). It is designed to meet the legislatively recognized moral imperative that the needy "not suffer unnecessarily from cold, hunger, sickness or be deprived of shelter." N.J.S.A. 44:8-122. It implements the State's declared public policy to provide immediate and continuing welfare assistance to those in need. N.J.S.A. 44:8-120. Withdrawal of general assistance benefits from one who is entitled to them necessarily leaves that person destitute.
Coextensively with its determination to meet the moral obligation to provide for those needy persons who are otherwise unable to obtain aid, the Legislature adopted a policy that general assistance recipients who are capable of working must give back work to the municipality in exchange for that aid. N.J.S.A. 44:8-114. "Thus, able-bodied individuals who have no mental or emotional handicaps which make them unemployable, would be required to render service to the community in return for assistance payments." Statement to Senate Bill 3075 (1977). To this end, the Legislature has provided that "any person who refuses without good cause to report for or to perform work to which he has been assigned ... shall thereupon become ineligible for public assistance until he reports for and performs work ... or shows his willingness to do so according to regulations established by the Commissioner [of Human Services]...." N.J.S.A. 44:8-114.
Pursuant to the authority to adopt appropriate regulations for the administration of general assistance, N.J.S.A. 44:8-111(d), the Commissioner promulgated regulations to implement the statutory requirement of ineligibility for general assistance for failure to work. N.J.A.C. 10:85-3.2(g) and N.J.A.C. 10:85-10.6. These regulations provide an administrative framework for work placement and recognize exemptions for categories of unemployable persons. As pertinent to this case they provide:
[A]ny person who voluntarily ceases employment without good cause or any person who has been involuntarily terminated from employment for reasons *229 attributable to his/her own negligence shall be considered unwilling to work for the 90 day period immediately following such failure, refusal or termination. The MWD [municipal welfare department] will deny or terminate (with notice) all assistance to or for such person for the 90 day period or the remainder of it. N.J.A.C. 10:85-3.2(g)(7).
N.J.A.C. 10:85-3.2(g)(6) provides that a person has "good cause" to refuse or quit work under any of the following circumstances:
i. No bona fide offer of employment was received by the individual.
ii. Rates offered or paid were less than an applicable minimum wage established by law.
iii. The individual was physically unable to engage in the employment in question.
iv. No reasonable means of transportation to work was available.
v. Working conditions were hazardous to health or safety.
vi. An offered job was available solely because of a strike or walkout of other employees of the employer or organization offering employment.
vii. The job required membership in a union which the recipient did not wish to join.
Appellant, a 55-year old man, had been receiving general welfare assistance since 1981. Prior to this, he had worked for nine years as an assistant foreman in a warehouse. At the time the instant dispute arose, he was assigned to work as a laborer at the Newark Recycling Company.
At about 6 p.m. on April 12, 1983, a burglar alarm sounded at the Newark Recycling Company. The responding police officers found no signs of a forceable entry nor was there any report of anything stolen. They did, however, find appellant sleeping in the locker room. As a result of his unauthorized presence on the premises after hours, the Newark Recycling Company did not want him working there anymore, although they declined to press any charges.
Appellant offered as an explanation for his presence at the site pain he experienced when required to do some particularly heavy lifting which led him to take a prescribed medication, Flexerol. When he punched out at the end of the day, he felt drowsy, lay down in the locker room and fell asleep.
*230 On April 22, 1983 respondent advised appellant his general assistance benefits were to be suspended for 90 days pursuant to N.J.A.C. 10:85-2.2(g)(7)(ii) as a "person who has been involuntarily terminated from employment for reasons attributable to his/her own negligence." Appellant requested a local fair hearing which resulted in a determination that appellant should be terminated for 90 days because of an alleged attempted burglary. Appellant then requested a state fair hearing which was held before an Administrative Law Judge. This resulted in an initial decision which found that appellant "was grievously wronged by action of the GAEP Administrator when he entered in the work record "Breaking and Entering" as the reason for appellant's discharge from the work site" but held that his presence at a closed plant after working hours under suspicious circumstances justified his discharge. The ALJ concluded his discharge was for good cause due to his own negligence  a criteria for termination of assistance established by N.J.A.C. 10:85-3.2(g)(7)(ii).
Appellant contends the regulations penalizing general assistance recipients with a 90-day termination when they are discharged are unwarranted, invalid and contrary to legislative intent. Although the issue was not raised below and therefore need not be considered, see Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234 (1973), the matter is of sufficient importance to warrant consideration on the merits.
As already noted, the Legislature has sought to balance the moral need to care for those less fortunate individuals who without such aid would be destitute with the generally held belief that welfare recipients who are able to work should be required to do so. To implement its determination that employable persons should work, the Legislature provided "Any person who refuses without good cause to report for or perform work to which he has been assigned ... shall thereupon become ineligible for public assistance until he reports for and performs work ... or shows his willingness to do so according to regulations *231 established by the Commissioner." N.J.S.A. 44:8-114. The Commissioner has interpreted this to permit a 90-day termination when a recipient is fired due to his own negligence. We do not find such a Legislative purpose. A fair reading of the act makes it clear that work is made a condition of welfare for the employable. If one is able to work, the Legislature has said he must do so. And they have spelled it out  the recipient shall be "ineligible for public assistance until he reports for and performs work or shows his willingness to do so...." N.J.S.A. 44:8-114. There is no evidence in this case that appellant violated this statutory standard. He reported for work and performed his duties. He was found to have violated a different standard  he performed his duties negligently. N.J.A.C. 10:85-3.2(g)(7)(ii)(i). Negligence as a standard creates a basis for termination of welfare assistance beyond that which is statutorily provided.
Nor is there any suggestion in the legislative language of a punishment or of an intention to create prolonged destitution. The provision is strictly coercive. Regulations are accorded the benefit of the presumption of validity and regularity but they must be reasonable and not arbitrary  they must further the legislative goals. Pascucci v. Vagott, supra 71 N.J. at 50.
The authority to make rules and regulations for the effectuation of the statutory policy is administrative and not legislative, if its exercise is confined by certain and definite standards of action, even though the regulations be given the force and effect of law. It is a corollary of this principle that the rules and regulations and administrative action cannot subvert or enlarge upon the statutory policy or the rules and regulations therein set down. Administrative implementation cannot deviate from the principle and policy of the statute. Abelson's, Inc. v. N.J. State Board of Optometrists, 5 N.J. 412, 423-24 (1950).
Here the legislative purpose was to furnish relief but at the same time to coerce work. By creating a 90-day ineligibility, the Commissioner has substituted a penalty for a condition. The Legislature has decided ineligibility shall last "until he reports for and performs work ... or shows his willingness to *232 do so...." N.J.S.A. 44:8-114. Words in a statute must be accorded their plain meaning. See Service Armament Co. v. Hyland, 70 N.J. 550, 562 (1976).
We find the regulation terminating general assistance recipients from welfare for a 90-day period if they are discharged from the work site because of their negligence does not further the legislative policy and is therefore invalid. See N.J. Chamb. Commerce v. N.J. Elec. Law Enforce. Comm., 82 N.J. 57, 82 (1980).
Reversed.