218 N.J. Super. 452 (1987)
528 A.2d 43
TYRONE RODGERS, ET AL., PLAINTIFFS-APPELLANTS, AND ALFRED A. SLOCUM, PUBLIC ADVOCATE OF THE STATE OF NEW JERSEY, PLAINTIFF-INTERVENOR,
v.
KENNETH A. GIBSON, MAYOR, CITY OF NEWARK; MUNICIPAL COUNCIL OF THE CITY OF NEWARK; DIRECTOR, MUNICIPAL WELFARE OF THE CITY OF NEWARK; DIRECTOR, DIVISION OF PUBLIC WELFARE OF THE STATE OF NEW JERSEY; DIRECTOR, DEPARTMENT OF HUMAN SERVICES OF THE STATE OF NEW JERSEY; DIRECTOR, DIVISION OF MENTAL HEALTH AND HOSPITALS OF THE DEPARTMENT OF HUMAN SERVICES OF THE STATE OF NEW JERSEY; COUNTY OF ESSEX, DEFENDANTS-RESPONDENTS.
BETTY ANN PATTERSON, PETITIONER-APPELLANT,
v.
DEPARTMENT OF HUMAN SERVICES OF THE STATE OF NEW JERSEY, ET AL., RESPONDENTS-RESPONDENTS.
JAMES DAVIS, PETITIONER-APPELLANT,
v.
DEPARTMENT OF HUMAN SERVICES OF THE STATE OF NEW JERSEY, ET AL., RESPONDENTS-RESPONDENTS.
MELVIN ANCRUM, PETITIONER-APPELLANT,
v.
DEPARTMENT OF HUMAN SERVICES OF THE STATE OF NEW JERSEY, ET AL., RESPONDENTS-RESPONDENTS.
ROSE MARY EVANS, ET AL., PETITIONERS-APPELLANTS, AND ALFRED A. SLOCUM, PUBLIC ADVOCATE OF THE STATE OF NEW JERSEY, PETITIONER-INTERVENOR,
v.
DEPARTMENT OF HUMAN SERVICES OF THE STATE OF NEW JERSEY, ET AL., RESPONDENTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 27, 1987.
Decided June 26, 1987.
*453 Before Judges PRESSLER, GAULKIN and ASHBEY.
Nicholas T. Grosch, Assistant County Counsel, argued the cause for respondent County of Essex in A-1968-85T6 (H. Curtis Meanor, Acting County Counsel, attorney; Nicholas T. Grosch, on the letter brief).
Teresa M. Burzynski, Deputy Attorney General, argued the cause for respondent Department of Human Services in A-3076-86T5, A-3240-86T5, A-3241-86T5 and A-3653-86T5 (W. Cary Edwards, Attorney General of New Jersey, attorney; James J. Ciancia, Assistant Attorney General, of counsel; Dennis J. Conklin, Deputy Attorney General, on the brief).
Raymond Bolanski, First Assistant City Attorney, argued the cause for respondent City of Elizabeth in A-3076-86T5, A-3240-86T5 and A-3241-86T5 (Frank P. Trocino, City Attorney, attorney; Raymond Bolanski, on the brief).
Eric J. Goodman, Township Attorney, argued the cause for respondent Township of Irvington in A-3653-86T5.
*454 American Civil Liberties Union filed an amicus curiae brief in A-1968-85T6, A-3076-86T5, A-3240-86T5, A-3241-86T5 and A-3653-86T5 (Eric Neisser, attorney; John M. Payne, on the brief).
Joseph Harris David argued the cause for appellants Rodgers, et al., and Evans, et al. (Legal Services of New Jersey, attorney; Melville D. Miller, Jr., of counsel; Joseph Harris David, on the brief).
Essex Newark Legal Services, attorney for appellants Rodgers, et al., and Evans, et al. (Elizabeth Inserra and Yvette Kyles, on the brief filed by Legal Services of New Jersey).
Alfred Donnarumma argued the cause for appellant Patterson and appellant Ancrum (Union County Legal Services Corp., attorney; Alfred Donnarumma and Carol Horwitz, on the brief).
Madeleine Cagney argued the cause for appellant Davis (Community Health Law Project, attorney; Madeleine Cagney, on the brief).
John P. Thurber and Michael Z. Buncher, Assistant Deputies Public Advocate, argued the cause for intervenor in A-1968-85T6 (Alfred A. Slocum, Public Advocate, attorney; Richard E. Shapiro and John P. Thurber and Michael Z. Buncher, on the brief).
David G. Sciarra, Assistant Deputy Public Advocate, argued the cause for intervenor in A-3653-86T5 and amicus curiae in A-3076-86T5, A-3240-86T5, and A-3241-86T5 (Alfred A. Slocum, Public Advocate, attorney; David G. Sciarra, on the briefs).
Alison Brown Jones, Assistant Corporation Counsel, argued the cause for respondent City of Newark in A-1968-85T6 and A-3653-86T5 (Glenn A. Grant, Corporation Counsel, attorney; Alison Brown Jones, on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
*455 In Maticka v. City of Atlantic City, 216 N.J. Super. 434 (App.Div. 1987), we addressed the problem of homelessness in the context of a challenge by the Public Advocate to the fault standard and time restriction prescribed by N.J.A.C. 10:82-5.10(c), the two-pronged qualifier which limits the eligibility of homeless families with dependent children for emergency shelter assistance. We held in Maticka that the fault standard of the regulation was arbitrary and unreasonable and therefore invalid. We declined, however, definitively to address the sustainability of the time limitation since we were of the view that judicial action would be premature until the ultimately responsible agency, the New Jersey Department of Human Resources, had the opportunity, by way of a rule-making public hearing, to reassess its time limitation and any other qualifying conditions in the light of reliable information respecting, among other considerations, the scope of the social and economic problem of homelessness, its root causes and effective long-term solutions, and the availability and interrelationship of the present multiplicity of public and private assistance programs and resources, administered with an apparent lack of effective coordination and efficiency by a multiplicity of governmental agencies and private charitable groups. Nevertheless, we stayed enforcement of the time limitation of the regulation pending the Department's hearing and any action it would take based thereon because we were satisfied by the record before us in Maticka that if we did not do so, families with dependent children who had no other available resources would be left without any shelter at all.
Maticka was expressly limited to families with dependent children who receive assistance pursuant to N.J.S.A. 44:10-1 et seq., since that was the only category of homeless person involved in that litigation. We nevertheless recognized that the problem of homelessness affects others as well, 216 N.J. Super. at 438, n. 1, among whom are recipients of general assistance (GA) pursuant to the General Public Assistance Law, N.J.S.A. *456 44:8-107 to -149. It is the imminent and actual homelessness of the GA recipients in these five consolidated cases which claims our attention here.
The basic issues raised by and on behalf of petitioners and plaintiffs here are essentially the same as those we considered in Maticka. First, they challenge the qualifying prescriptions of the regulation, N.J.A.C. 10:85-4.6, which imposes the same fault and time conditions on the eligibility of GA recipients for emergency assistance as N.J.A.C. 10:82-5.10(c) imposes on families with dependent children. Second, they claim a constitutional right to shelter under Article 1, §§ 1 and 2 of the New Jersey State Constitution (1947) as well as a mandated right of shelter under the General Assistance Law. Finally, they claim a statutorily mandated right of shelter under the Community Mental Health Services Act, N.J.S.A. 30:9A-1 to -11, for the homeless mentally ill in all state-funded mental health service areas. Because we reach the same dispositive conclusions here as we did in Maticka, we need consider at this time only the first of these contentions.
Of the five cases before us, three, Ancrum, Patterson, and Davis, each of which involves an individual petitioner, come to this court by way of direct appeal from a determination of the Department of Human Services affirming the action of the City of Elizabeth in terminating the respective petitioner's emergency assistance based solely on the time limits of the regulation. Rodgers, a representative action whose primary focus is on the shelter problems of the indigent mentally ill homeless of the City of Newark, was transferred to this court by the Law Division some two years after its inception. See R. 2:2-3(a)(2); R. 1:13-4. The last, Evans, involves a group of 22 petitioners, residents of Newark and Irvington, who were advised by their respective municipal welfare departments in March 1987 that their emergency assistance grants would be terminated effective April 3, 1987, pursuant to the 60 to 90 day time limit of the GA regulation. The Supreme Court, on an application for emergent relief, remanded Evans to us for our consideration *457 together with the other four cases and stayed termination of emergency assistance for those petitioners pendente lite. We then stayed the termination of assistance pending appeal in Ancrum, Patterson, and Davis.
Little need be said by way of factual recitation. It is virtually undisputed that the petitioners and plaintiffs in these cases are destitute and that their sole financial resource is the flat GA grant they each receive, $133 monthly in the case of employable recipients and $200 in the case of unemployable recipients. Their inability to obtain shelter is primarily the result of a profound scarcity of any kind of living accommodation affordable on their grant income, a scarcity exacerbated by the policy of many rooming-house owners not to rent to welfare recipients or to members of minorities or either. Inexpensive accommodations which are destroyed by fire, as in the case of petitioners Ancrum and Patterson, both of whom had been living in an Elizabeth rooming house which burned down on December 20, 1986, are not readily replaceable, if replaceable at all. Battered people and people discharged from mental hospitals, in-patient substance abuse treatment programs and other institutions who have no family or friends offering accommodation and who have no other place to go cannot afford shelter on their GA grants. There appears to be no governmentally provided emergency group shelters in Newark or elsewhere in Essex County, and the few privately maintained ones are seriously overcrowded, overstressed, and unable to respond to the overwhelming need. In short, the record in this case describes a catalog of human suffering, illness, disease, degradation, humiliation, and despair which shakes the foundations of a common belief in a compassionate, moral, just, and decent society.
The general assistance relief prescribed by N.J.S.A. 44:8-107 et seq., was conceived of as providing a program of "last resort to needy single persons and married couples between 18 and 65 years of age who have no minor children." Pascucci v. Vagott, 71 N.J. 40, 45 (1976). As this court said in Newark Div. of *458 Public Welfare v. Ragin, 197 N.J. Super. 225, 228 (App.Div. 1984), the program, administered by municipalities pursuant to State supervision and financial contribution, is
designed to meet the legislatively recognized moral imperative that the needy "not suffer unnecessarily from cold, hunger, sickness or be deprived of shelter." N.J.S.A. 44:8-122. It implements the State's declared public policy to provide immediate and continuing welfare assistance to those in need. N.J.S.A. 44:8-120.
Despite the apparent mandate of the General Assistance Law and its statement of beneficent purpose, the GA program is not presently adequately funded or administered with the aim of preventing the homelessness of all destitute single people, even with the adjunctive support legislatively intended to be made available by the recent enactment of the Prevention of Homelessness Act, N.J.S.A. 55:13C-1 et seq., and the statute dealing with emergency shelters for the homeless, N.J.S.A. 55:13C-1 et seq., both of which are to be implemented and administered by the Department of Community Affairs, and the Community Mental Health Services Act, N.J.S.A. 30:9A-1, to be implemented and administered by the Department of Human Services, Division of Mental Health and Hospitals.
We deem it clearly beyond our competence and jurisdiction on these appeals to address in an adjudicatory manner the basic inadequacies in this State's assistance delivery system. We recognize the financial scope of the problem, the budgetary constraints in dealing with it, the primary role of other branches of government, the conflicting social policy predicates of alternate solutions, and the enormous executive and administrative complexities necessarily encountered in dealing with these problems. We focus then on the single and narrow legal issue raised by the attack on the emergency assistance regulation, N.J.A.C. 10:85-4.6, namely, whether the fault and time limitations therein contained are valid as tested by the social problem sought to be remedied by the General Assistance Law and the remedial dictates legislatively prescribed by that law.
*459 As to the fault standard, which is challenged by Rodgers, we reach the same conclusions we reached in Maticka for the reasons we therein expressed. We also conclude, for the same reasons, that the seven-day limitation of N.J.A.C. 10:85-4.6(a) also challenged by Rodgers is invalid. That section of the regulation, no analog of which was before us in Maticka, provides that emergency assistance is available only for those emergencies "which occurred within the seven calendar days immediately prior to the application." There is nothing in the record or the argument of counsel suggesting any rational basis for this limitation, and we perceive none.[1] We therefore hold that it is arbitrary and hence invalid.
With respect to the 60 to 90 day limitation of the regulation, our perceptions are the same as they were in Maticka. Indefinitely continued emergency assistance would, to be sure, constitute a solution of sorts to the problem of chronic homelessness. That is not, however, the intended role of emergency assistance and should not be. As we pointed out in Maticka and as is reinforced by this record, emergency shelter assistance typically takes the form of motel accommodation. This approach is unjustifiably costly as well as unsatisfactory in human and social terms. The resources of government should be devoted to devising and funding long-term solutions for homelessness and not diverted into paying the unjustifiably high costs of motel room rental. Nevertheless, as unsatisfactory in concept and methodology extended emergency assistance may be, we cannot say at this point and on this record that the 60 to 90 day limitation is irrational in terms of the statutory mandate any more than we can characterize it as *460 a reasonable implementation of that mandate. As in Maticka, it appears that emergency assistance at this moment may be all that stands between destitution and consequent homelessness.
Therefore, as in Maticka, we commit the issue of the time limitation in the first instance to the Department of Human Services. Since we are advised that the hearings we directed in Maticka have not yet been held, we leave it to the Department to determine whether the general assistance hearing should be consolidated with the hearing to be held on the regulation dealing with emergency assistance for families with dependent children. Also as in Maticka, we direct the Department to engage the participation of those governmental and private agencies presently charged with or which have voluntarily undertaken administration of programs designed to alleviate the homelessness problem. In the case of general assistance recipients, not only the Department of Community Affairs but also the Division of Mental Health and Hospitals should be invited to participate. The regulatory determination which the Department of Human Services ultimately makes respecting emergency assistance for homeless recipients of general assistance will then, ideally, have taken into account, against the backdrop of the statutory mandate, the extent and nature of the problem, its causes and long-term solutions, the availability of all other public and private resources, and the means of effectuating a coordinated and comprehensive use of these resources.
Finally, pending further administrative action, we continue all stays heretofore ordered both by this court and the Supreme Court with one modification, namely, that emergency accommodation need not be limited to motel room rental. It is clear to us from this record that many weeks of alternative accommodation in rooming houses, boarding houses, or such similar arrangements can be purchased at the same cost as a single week in a motel. Based on this record, we believe that governmental and private agencies working together in a concentrated effort can produce appropriate emergency accommodation for these *461 plaintiffs and petitioners during the stay period within reasonable financial limits.
We remand all of the consolidated cases to the Department of Human Services for a rule-making hearing to consider both the effect and consequence of the time limitation of N.J.A.C. 10:85-4.6(b)(1). We declare invalid the fault standard and seven-day prescription of N.J.A.C. 10:85-4.6(a). The stays of the orders of termination heretofore ordered are continued pending further agency rule-making action subject, however, to the modification herein stated.
NOTES
[1] As we read this requirement, if a person is, for example, rendered homeless by fire or other natural disaster, and is gratuitously afforded temporary shelter by family, friends or charity for a week and is during that time unable to find replacement shelter, emergency assistance will then be foreclosed because of the week's delay in requesting it. We see no legitimate purpose in terms of the policy, philosophy, or administration of the General Assistance Law justifying this consequence.