IN THE MATTER OF PETITIONS FOR RULEMAKING N.J.A.C. 10:82–1.2 AND 10:85–4.1.

Superior Court of New Jersey
Appellate Division

Argued February 9, 1988—Decided March 10, 1988.

**454**

Before Judges MICHELS, SHEBELL and ARNOLD M. STEIN..

*Melville D. Miller, Jr.,* argued the cause for petitioners (Legal Services of New Jersey, attorneys; *Melville D. Miller, Jr., Joseph Harris David, Robert Meek* and *Ted Gardner,* on the brief).

*Dennis J. Conklin,* Deputy Attorney General, argued the cause for respondent New Jersey Department of Human Services (*W. Cary Edwards,* Attorney General, attorney; *Michael R. Clancy,* Deputy Attorney General, and *Teresa M. Burzynski,* Deputy Attorney General, on the brief).

*David G. Sciarra* argued the cause for *amicus curiae* New Jersey Public Advocate (*Alfred A. Slocum,* Public Advocate, attorney; *David G. Sciarra,* on the brief).

*Robert T. Pickett* argued the cause for *amicus curiae* New Jersey Black Issues Convention, Inc.

*Nicholas Katzenbach* argued the cause for *amicus curiae* petitioners (*Riker, Danzig, Scherer, Hyland & Perretti,* attorneys; *Douglas S. Eakeley,* of counsel and on the brief; *Laura J. Berkowitz,* on the brief).

The opinion of the court was delivered by

SHEBELL, J.A.D.

This is an appeal from the denial by the New Jersey Department of Human Services (DHS) of two petitions for rulemaking. The first was filed on behalf of all recipients of Aid to Families with Dependent Children (AFDC) in the State of New Jersey and the second on behalf of all recipients of General Assistance (GA) in the State. The petitions seek amendments to *N.J.A.C.* 10:82–1.2 and *N.J.A.C.* 10:85–4.1, respectively, to establish a "standard of need" based on actual living costs in New Jersey. We have consolidated the two appeals to this court, one from the petitioners and the second from approximately 100 *amici* consisting of civic, social, political, fraternal, charitable and religious organizations supporting the requests for relief sought in the class petitions. In keeping with the importance and magnitude of the problem to be addressed, we have had the benefit of extraordinarily competent, complete and well-reasoned briefs from each of the parties.

Petitioners envision the relief sought as a first and all important step in obtaining adequate financial assistance for the poor. The petitioners' briefs are, in part, treatises on the suffering of the poor and the resultant social ills they deem to have been caused by the gap between money allocated and what in fact constitutes a realistic "standard of need." The proofs submitted demonstrate that the grants under both the AFDC and GA programs are insufficient to meet actual living costs in New Jersey. While appellants have urged both State statutory and constitutional grounds in support of the relief sought, our decision today is based solely on State statutory grounds. From our review of the applicable law we find that it is the statutory obligation of the Commissioner of Human Services of the State of New Jersey (Commissioner) to establish a "standard of need" based upon the actual cost of basic necessities in New Jersey.

We find no need to recount in detail the consequences of the inadequacy of the AFDC and GA grants to the needy in this

State. They have been graphically presented by the petitioners, and it is fully recognized, even by respondent, that welfare assistance under either program is insufficient to meet the basic living needs of the average recipient. This court has recognized the consequences of the inadequacies of the State's welfare programs in its recent decisions in *Rodgers v. Gibson,* 218 *N.J.Super.* 452 (App.Div.1987) and *Maticka v. City of Atlantic City,* 216 *N.J.Super.* 434 (App.Div.1987).

Petitioners argue that the Department of Human Services and its Commissioner have failed to fulfill their duty under the New Jersey statutes to carry out the legislative policy of providing for the reasonable maintenance and well-being of the needy. No federal issues are raised. We conclude that neither of the programs involved can be carried out in the manner intended by the Legislature in the absence of a "standard of need" which is based upon the actual cost of purchasing the necessary food, clothing, shelter and basic essentials for health and safety in the State of New Jersey.

Our initial concern in this matter is whether the intervention of the judiciary is appropriate or whether, as urged by respondent, it is an intrusion by the judiciary "into the delicate relations between two co-equal branches of government...." *See also Ivy Hill Park v. Property Liability,* 221 *N.J.Super.* 131, 139–40 (App.Div.1987). We do not regard what we do today as such an intrusion. Rather, we perceive this opinion as fulfilling our constitutional obligation to give sense and meaning to legislation designed to provide essentials for the physical health and safety of the poor. *See Hausman v. Dept. of Inst. and Agencies,* 64 *N.J.* 202, 207, *cert.* den. 417 *U.S.* 955, 94 *S.Ct.* 3083, 41 *L.Ed.*2d 674 (1974); *Rodgers, supra; Maticka, supra.*

The AFDC was established by the Social Security Act of 1935 and was then known as the "Aid to Dependent Children" program. 49 *Stat.* 620 as amended 42 *U.S.C.* § 301–1394. *See King v. Smith,* 392 *U.S.* 309, 88 *S.Ct.* 2128, 20 *L.Ed.*2d 1118 (1968). AFDC is administered by those states electing to take part in the program. 42 *U.S.C.* § 601 *et seq.* New Jersey

chose to participate in the AFDC program and therefore enacted *L*.1959, *c.* 86 (*N.J.S.A.* 44:10–1 *et seq.*). Participating states are free to pay as little or as much as they choose under the AFDC program. *Rosado v. Wyman,* 397 *U.S.* 397, 408, 90 *S.Ct.* 1207, 1215, 25 *L.Ed.*2d 442, 453 (1970). The cost of providing assistance under the AFDC program in New Jersey is shared by the Federal, State and County governments. *N.J.S. A.* 44:10–5.

The two critical factors in the determination of the amount of the AFDC grant paid to a recipient are: first, the "standard of need" and second, the "level of benefits" that will be paid. *Rosado,* 397 *U.S.* at 408, 90 *S.Ct.* at 1216, 25 *L.Ed.*2d at 453. Diversity exists among the states with respect to their standards of need, the items which are included as essentials, as well as the level of benefits to be paid. *Ibid.* Some states impose a maximum on the amount of public assistance payable to an individual or family while others place a limitation on the benefits by establishing a fixed percentage of the standard of need which may be paid to recipients. *Rosado,* 397 *U.S.* at 409, 90 *S.Ct.* at 1216, 25 *L.Ed.*2d at 454.

New Jersey has not by statute attempted to fix the standard of need or the level of benefits. *N.J.S.A.* 44:10–1 *et seq.* Nor does our statute specifically indicate how the standard of need is to be fixed; rather, it authorizes, directs and empowers the Commissioner to issue or cause to be issued all rules and regulations necessary to secure for the State of New Jersey the maximum federal financial participation available with respect to the AFDC program and otherwise to accomplish the purposes of the New Jersey program. *N.J.S.A.* 44:10–3.

The act lists the following as intended purposes:
(1) To provide for the care of eligible dependent children in their own homes or in the homes of relatives, under standards and conditions compatible with decency and health,
(2) To help maintain and strengthen family life,
(3) To help such parents or relatives to attain the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection, and

(4) To provide for the care of a dependent child whose parents have been denied assistance under the provisions of section 2 [of *L.*1982, *c.* 3]. [*N.J.S.A.* 44:10–1(a) ].

New Jersey currently operates through a system of flat grants under which a fixed amount is paid on behalf of an eligible recipient. *N.J.A.C.* 10:82–1.2. Prior to 1971, AFDC grants were in an amount set on a case-by-case basis. It appears that when New Jersey attempted to reform its welfare system it computed the average need of a random sample of recipients based upon data it had previously compiled under the family-by-family needs system. New Jersey at the time was paying 100% of need and thus the change to averaging meant that some families received increased benefits while others' benefits were decreased. *New Jersey Welfare Rights Organization v. Cahill*, 483 *F.*2d 723, 725 (3d Cir.1973). The former system incorporated automatic cost of living changes. Since 1971 neither inflation nor actual need has been a factor in the New Jersey standard of need. *Id.* at 726. The consequence has been that by 1987 despite a 176% increase in the consumer price index, AFDC benefits, taking into account both cash allotment and food stamps, have increased only 77% in New Jersey. A study conducted by the National Social Science and Law Project showed that in 1985 the New Jersey monthly payment together with the maximum food stamp allotment for a family of four covered only 46% of the family's actual basic needs.

Unlike the AFDC program which is a cooperative program between the Federal and State governments, the New Jersey GA program, *N.J.S.A.* 44:8–107 *et seq.*, is entirely a New Jersey State program. It is designed to provide assistance to those who do not qualify for any other cash public assistance benefits. The General Public Assistance Law (GPAL) provides for the splitting of costs between the State (75%) and Municipalities (25%). *N.J.S.A.* 44:8–129. GA has two categories of recipients: those deemed "employable" and those deemed "unemployable." Those in the former group receive lower grant amounts than

those in the latter group. *N.J.S.A.* 44:8–109. When the AFDC
program was changed to flat grants in 1971, the GA program
was also changed. *Pascucci v. Vagott*, 71 *N.J.* 40, 45 (1976).
Since 1974, GA grants have increased 12% while inflation has
exceeded 117%. GA recipients presently receive $140 per
month if employable and $210 if unemployable. These benefits
are paid under a statute which has the following stated policy:

> It is hereby declared to be the public policy of this State *that every needy
> person shall,* while in this State, *be entitled to receive such public assistance
> as may be appropriate with reference to need* of a category of persons and
> whether or not such persons are employable, and that the furnishing of such
> public assistance is primarily the duty of the municipalities and of civil and
> charitable organizations *but that all needy persons not otherwise provided for
> under the laws of this State shall hereafter receive public assistance* pursu-
> ant to law and the provisions of this act. [*N.J.S.A.* 44:8–109; emphasis
> supplied].

Every municipality is required to provide public assistance to
persons eligible under the GPAL and to conduct its program in
accordance with State statutes and rules and regulations prom-
ulgated by the Commissioner. *N.J.S.A.* 44:8–114; *State v.
Malone,* 164 *N.J.Super.* 47 (Ch.Div.1978). The GPAL requires
that there be a director of welfare in each municipality whose
duty it is to "render such aid and material assistance as he may,
in his discretion, after reasonable inquiry, deem necessary to
the end that such person may not suffer unnecessarily, from
cold, hunger, sickness, or be deprived of shelter pending fur-
ther consideration of the case." *N.J.S.A.* 44:8–117 and 122;
*Pascucci,* 71 *N.J.* at 48.

Continued assistance under the GPAL is "to meet any and all
of the several needs of, or as may be necessary to protect the
well-being of, the person or persons to whom assistance is to be
granted such as the provision of food, milk, shelter, fuel,
clothing or medical care. . . ." *N.J.S.A.* 44:8–124. The extent
of individual grants is to be in accordance with standards and
budgets authorized by the Commissioner. *Ibid.* The duties of
the Commissioner under the GPAL are spelled out in *N.J.S.A.*
44:8–111 and include the requirement that the Commissioner
"[p]romulgate, alter and amend from time to time such rules,

regulations and directory orders as may be necessary for the administration of State aid and for the carrying out of any provisions of law regulating the same and of the provisions of this act, which rules, regulations and orders shall be binding upon the various municipalities...." *N.J.S.A.* 44:8–111(d).

Thus, under both the AFDC and GA statutes the duty is imposed upon DHS to administer the programs in such a manner as to carry out their purposes. The statutes do not indicate that the Legislature had anything less in mind than the setting of a standard of need geared to providing a reasonable means of determining whether an applicant is in fact unable to obtain the basic necessities by reason of insufficient income or resources. *N.J.S.A.* 44:10–3; 44:8–109, 122, 124. The Legislature cannot be adequately informed as to the extent of assistance which is necessary to meet the needs of the poor unless DHS carries out the required task of providing a standard of need which is based upon actual costs of basic living essentials in the State.

The Legislature has entrusted to DHS the task of determining what constitutes the basic needs of the poor as well as what resources are required to provide adequate assistance to take care of the reasonable maintenance and well-being of eligible persons. *N.J.S.A.* 44:10–2 and 44:7–12. We therefore must disagree with the Commissioner's view that the agency's task is limited to adjusting the standard of need according to the flow of funds appropriated by the Legislature. The extent to which funds are to be made available to meet the standard of need under New Jersey statutes is a political question to be decided by the representatives of the people, and it is a decision that can only be made in a meaningful way when those representatives are fully aware of the extent to which they are providing or denying the needy the funds which are necessary to meet basic living requirements. *Cf. Texter v. Human Services Dep't*, 88 *N.J.* 376, 389 (1982). Further, the failure to set a standard of need based upon actual living costs impacts upon the decision as to who is eligible for assistance because in

establishing eligibility the standard of need must be used to determine whether or not the income of the applicant meets that level. *See Motyka, et al. v. McCorkle, et al.,* 58 *N.J.* 165, 170–71 (1971).

Our view is in accord with the decision of the Supreme Judicial Court of Massachusetts in *Coalition For Homeless v. Secretary,* 400 *Mass.* 806, 511 *N.E.*2d 603 (1987) which in interpreting a similar enabling statute concluded that it was the responsibility of the agency to establish an assistance standard that reflects an adequate cost of living and to bring to the Legislature's attention during the appropriation process the discrepancy between the standards and the actual payment levels. *See also Keller v. Thompson,* 56 *Haw.* 183, 532 *P.*2d 664 (1975).

We think it is abundantly clear that the purposes of the acts cannot properly be carried out without the establishment of a standard of need based upon timely information as to the actual cost of living essentials in the State or, in the discretion of the Commission, in the community in which the recipient resides.

We reverse and remand these petitions to the Commissioner for further proceedings consistent with this opinion.